HOWELL v. TOWNSHIP OF BURTCHVILLE.

1. MUNICIPAL CORPORATIONS—NEGLIGENCE—DEFECTIVE HIGHWAY—
   PERSONAL INJURIES—EVIDENCE—ADMISSIBILITY.
   In an action against a township for personal injuries caused
   to plaintiff by the dropping of the front wheel of an auto-
   mobile, in which she was riding, into a hole on the side
   of the highway in the approach to a bridge, where the
   condition of the highway, which had been built up and
   narrowed at the point of the accident, had been a subject
   of contention on the trial, involving the nature of its con-
   struction, etc., the reception of testimony as to the exist-
   ence of a hole opposite the one in question, more than two
   months previously, received for its bearing upon the char-
   acter of the soil, held, not error.

2. DAMAGES—EXCESSIVE VERDICT—EVIDENCE—SUFFICIENCY.
   A verdict for $2,000 cannot be said to be excessive, as a
   matter of law, in view of the testimony of plaintiff as to
   the seriousness of her injuries, which was corroborated,
   although defendant's testimony tended to show that her in-
   juries were much exaggerated and the resulting damage
   much less.

3. MUNICIPAL CORPORATIONS — NEGLIGENCE — CONTRIBUTORY NEGLI-
   GENCE—QUESTION FOR JURY.
   Defendant's contention that there was sufficient width of
   highway reasonably safe and fit for travel leading onto
   the bridge, so that the driver's swinging to the west, as
   he admits he did, to avoid the ruts, constituted contrib-
   utory negligence as a matter of law, held, not sustained by
   the record; the question under the evidence being one of
   fact for the jury.

Error to St. Clair; Tappan (Harvey), J. Sub-
mitted April 15, 1920. (Docket No. 72.) Decided
September 30, 1920.

Case by Lulu Howell against the township of
Burtchville for personal injuries caused by a defec-

On excessiveness of verdicts in actions for personal injuries
other than death, see comprehensive note in L. R. A. 1915A, 30.
   Authorities discussing the question of duty to have highway
safe for automobiles are collated in a note in 14 L. R. A. (N. S.)
816.

tive highway. Judgment for plaintiff. Defendant brings error. Affirmed.

*Moore & Wilson* (*Lincoln Avery*, of counsel), for appellant.

*Walsh & Walsh* and *C. L. Benedict*, for appellee.

STEERE, J.  In the forenoon of July 2, 1916, plaintiff suffered an accidental injury while riding with her husband in an automobile he was driving along what is known as the "State road" running northerly and southerly through defendant Burtchville township, St. Clair county.  They were going north on this highway and the accident occurred just as they reached the south side of a bridge spanning a small stream called Milwaukee creek, owing, as plaintiff claims, to the defective condition of the narrowed and graded approach to the bridge.

They were going from Lakeport to Jeddo and had turned north on the State road at Henderson's corners some 20 or 30 rods south of the bridge towards which the grade of the road descends to the comparatively narrow valley of the creek, across which it runs practically level, but graded up with a fill and narrowed as it approaches the bridge, with ditches on each side. The filled or raised portion of the road extending south a short distance to higher land, afforded as constructed a level driveway about 12 feet wide at the bridge, the floor of which was 3 or 4 feet above the normal level of the ground and about 14 feet wide inside the railing. Wings or retaining walls extended southeasterly and southwesterly from the southerly corners of the bridge for some 14 or 16 feet.  The roadway south of the fill was 25 feet wide or more and in good condition.  The condition of the narrowed approach at and near the bridge is a matter in dispute.  The occasion of the accident as claimed by plaintiff was a hole in the west

side of the highway near the bridge concealed by growing weeds, into which the left front wheel of the automobile sank, causing it to strike the edge of the bridge planking and suddenly stop, throwing plaintiff forward against the wind-shield, cutting and otherwise injuring her. That there was a hole on that side of the road near the bridge into which the wheel dropped causing the accident is not disputed. Its nature, distance from the center of the road and the width of the safe or traveled portion of the roadway at that point, are matters in dispute.

Plaintiff's husband was driving an old model Maxwell car with the driver's seat on the right-hand side. He testified that he was driving leisurely at a rate of 8 or 10 miles an hour, that the road was fairly good and amply wide until he reached the narrow graded up approach near the bridge where wagon tracks or ruts had been worn into the surface of the road making an apparent "bump" of about 4 inches at the south edge of the bridge for one driving in them, and as he neared the bridge he swung to the west a sufficient distance to avoid the bump, putting the west rut between his wheels, with left wheels about 8 inches outside of it, and when he was close to the bridge his left front wheel dropped into a hole which he had not seen owing to its being concealed from him by a large burdock growing with other weeds close along the side of the road; that the machine was brought by the drop to a sudden stop against the edge of the bridge, throwing his wife violently forward against the wind-shield which broke and she was severely cut with broken glass, and otherwise injured. That there were burdocks and weeds and a hole on that side of the road into which the wheel dropped, causing the accident, substantially as related, appears from defendant's own testimony; but it is denied that plaintiff was so seriously or permanently injured as she claims, and con-

tended that the hole was outside the traveled portion of the road, on the side or slope of the grade, that there was a safe, well defined driveway of at least 12 feet in width leading onto the bridge practically level with its floor, and the accident resulted from the driver's negligence in swinging his car so far outside the traveled way as he was about to go upon the bridge.

Plaintiff's testimony was mainly confined to what befell her. She stated that she could tell nothing about the "road or hill" and did not know what stopped the car, but as they rode along she was looking at a lot of horses in a field when, as she described the event:

"The first thing I knew I was out of my seat and back again. I don't know where I went or how I got back; but I had the glass in my side and the wind-shield was broken and the binding on top of the wind-shield bent down.   *   *   *   I felt a sharp pain at my waistline and I reached down my hand and pulled it out and it was glass."

She further told of her husband going round to her side of the car and taking her out, of a Mrs. Hamilton, who was on the bridge and saw the accident, caring for her and helping her to Mrs. Hamilton's house near by where they cut away her clothing and dressed her wound which was bleeding profusely. She was taken by another car which came along soon after to Port Huron and medical attendance procured. She testified that in addition to the wound in her side her shoulder and knee were sprained and seriously injured, saying in part:

"My knee swelled up and the leg got black and blue and I could not step or move. I could not lay down for my knee and shoulder; I had to set just so,   *   *   *   I seemed to ache all over that whole side. I couldn't move my shoulder, arm or knee. I could not put my hand up to comb my hair or wash my face. My shoulder gives me trouble yet. I guess it was three weeks after the accident before I was able to be up and around the house,   *   *   *   the cut in my side healed

all right, but it seemed to grow fast there and I had a good deal of trouble with that."

Of the duration of her injuries she testified that she could not move her shoulder unless she moved her whole side, that her kneecap would snap out of place at times, and she had to be very careful as the knee gave out quite often.

The case was submitted to the jury on a very full, fair, and appropriate charge, resulting in a verdict and judgment in plaintiff's favor of $2,000. . Defendant moved for a new trial on various grounds which included in substance those urged here. Findings and conclusions were filed by the court denying said motion.

The grounds for reversal urged and argued in defendant's brief are thus stated:

"*First.* Because of the contributory negligence of the plaintiff's husband in leaving the traveled portion of the road at the time of the accident, there being a sufficient width of highway reasonably safe and fit for travel over which he could have driven with safety.

"*Second.* That the award of the jury to plaintiff is grossly excessive in view of the proof of the slight character of the injuries sustained by her at the time in question.

"*Third.* That the court erred in its receipt of the testimony relative to the existence of the hole more than two months prior to the accident in another part of the road and which was immediately repaired by the proper township authorities, and the existence of which was entirely unknown to plaintiff or her husband on the day the accident happened."

In support of the last contention, against the admission of evidence relative to the existence of a previously repaired hole in another part of the road, counsel cited *Langworthy* v. *Green Township,* 88 Mich. 207. In that case plaintiff was permitted to show by his own witness, as an implied admission of the dangerous character of the obstruction, that after the accident

the township had cut off the exposed portion of the log claimed to have caused it.   In the instant case the testimony objected to was drawn out by plaintiff's counsel on cross-examination of defendant's witnesses and related to a previously existing hole in the east edge of the driveway close to the bridge, and opposite the hole causing the accident, which had been repaired as defendant's witnesses testified.

During the progress of the trial the condition of this built-up road near the bridge had been a subject of contention involving the nature of its construction, the kind of soil composing it, and whether or not water coming down the highway from the south could run along the traveled way to the bridge where it might wash down holes at the side of the road or would all run into and along the side ditches.   When objection was made to this portion of the cross-examination plaintiff's counsel said:   "They are trying to claim no water got down to this bridge at all; all we want to show, it washed out under the bridge," and the court permitted the inquiry to be made.   Howell had testified that there were ruts in the road which caused him to turn out of the wagon track to the west at that point. He sat on the right-hand side of his car and chose the left side to avoid the ruts he saw, and said that he noticed "that low place at the right-hand side of the bridge, close to the bridge."   Defendant's highway commissioner testified, during his cross-examination, when asked about there having been a hole on the east side near the bridge,

"I saw a small hole there big enough, I think, to put a man's head in, towards the east side and right at the south edge of the bridge; it went down some.   I considered it wasn't necessary to have holes around in a bridge and I had Mr. Hamilton fill it in.   *   *   * I think it was more a settlement of the dirt in some way.   *   *   *   The road at that point had been filled and packed down time after time.   *   *   *   that was

like a cavity extending down into the road, like the cavity to a tooth."

There was conflicting testimony as to whether or not the hole directly opposite this had, or could have, washed out in a similar manner. We find no error in the conclusion upon that subject reached by the trial judge, stated in overruling defendant's motion for a new trial as follows:

"The evidence was received as bearing upon the character of the soil at the approach of the bridge in question, and this question of soil, in turn, upon the question as to whether there existed a hole of the depth and character alleged by the plaintiff. In addition there was some evidence of a depression at about the point where the former hole had been and evidence that made an inquiry as to the effect of this depression a proper subject of inquiry."

As to the contention that the verdict was excessive "in view of the proof of the slight character of the injuries sustained," the trial judge in passing upon that question when deciding defendant's motion for a new trial noted the case had been three times tried by a jury and said:

"As to the amount of the verdict, it was undisputed that plaintiff was injured. These injuries and the question as to their extent, and the pain and suffering, were submitted to the jury as sole judges as to their extent and consequent damages. It is my conclusion that the court has no right to substitute its judgment for that of the jury."

Both the trial judge and jury saw plaintiff and heard her testify as to the accident and her condition some three years after it occurred. We have quoted excerpts from her testimony, and there was much more of like import, sufficiently to show what was before the jury in that particular, and if the facts are as she claims the verdict cannot be accounted excessive. Her testimony as to injuries and subse-

quent condition of her side and crippled knee were supported by that of her husband.   Mrs. Hamilton, who cared for her at the time, dressed her wound and attempted to stop its bleeding with cold water and flour, testified:

"I didn't pay any particular attention to the machine.

"*Q.* I suppose you were more anxious about Mrs. Howell?

"*A.* Well, I didn't like to see her suffer, I did what I could to help her.   *   *   *   she was in pain, loss of blood, and she wanted water."

There was also abundant testimony for defendant which, if true, showed plaintiff's evidence as to the extent of her injuries much exaggerated and the resulting damages much less.   The trial court fully and correctly instructed the jury as to the measure of damages, which included compensation for shock and fright, pain, suffering, inconvenience, etc., matters of fact with no fixed standard of measurement beyond the sound sense and good judgment of the jury, based on the extent of the injuries as they found them to be. The credibility of the witnesses was for the jury whose province it was to decide the disputed issues of fact. This court cannot say as a matter of law that the case should be reversed because of an excessive verdict.

We are unable to agree with defendant's contention that it is conclusively shown there was sufficient width of highway reasonably safe and fit for travel leading onto the bridge so that plaintiff's swinging to the west as he admits he did to avoid the ruts constituted contributory negligence as a matter of law.   The testimony of witnesses varies from about 8 to about 12 feet as to the width of a fairly safe traveled way onto the bridge, certain of defendant's own witnesses, however, testifying to a jolt or rise from it at the edge of the bridge.   The grounds of negligence alleged in plaintiff's declaration are in substance that the safe traveled

portion of the way was at the point of accident much elevated, and narrowed by its then condition for safe travel to about one-half the width between the railings of the bridge it led onto; that it was protected by no railings or barriers until it reached the bridge, had deep ditches on each side and there were ruts in the traveled portions made by wagon wheels cutting into the surface several inches where they struck the bridge; that on the easterly side near the bridge was a depression extending into the grade, apparent to a passing traveler, a hole directly opposite on the west side obscured by weeds growing along the side of the road so close that travelers in the exercise of reasonable care endeavoring to avoid the ruts and jar at the bridge edge were in danger of getting a wheel into it as Howell did; that the nature of the narrow elevated approach was such as to make it liable to get out of repair, as defendant's officers had learned, and they knew or were presumed to have known of its unsafe condition at the time of the accident. The record is largely devoted to conflicting testimony as to the nature, width and condition of the highway generally, and ruts, holes, depressions, etc., at that point. Plaintiff's claim was sustained in substance by the testimony of her husband and other witnesses. Defendant produced numerous witnesses who disputed them in material particulars, although some of their testimony seems to favor plaintiff's contention. A witness named Van Luven, who visited the place shortly after the accident at Howell's request, testified that there were wagon ruts or tracks 4 inches deep where they hit the edge of the bridge, and a jagged hole at the west side on the edge of the traveled way, about 13 inches from the west wagon track, which looked as though water had worked through there and gone down to the incline of the bridge; that the distance between it and a hole or depression on the east side was

about 8 feet; that there were burdocks on the west side in the hole broken down by the automobile wheel which dropped into it. Mr. Goodman, a resident of that township for 57 years, testified to the existence of this hole on the west side which he estimated to be a foot and a half deep and about 18 inches from the west track; that where the road went onto the bridge it was somewhere about 8 feet wide, not giving room for two rigs to pass, and had settled down so there was quite a rise for a rig to go up on the bridge; he estimated the "bump" as 4 or 5 inches; observed where the track of the machine had turned astraddle of the west track and kept astraddle of it until it got to the bridge, running straight after it had got in that position. A taxpayer of the township named Barnes testified there was a hole on the east side made by the natural wear of the wheels or a washout near the plank and another hole on the west side, which he judged was a washout made by rains, somewhat obscured by a. burdock, and noticed this hole was so in the road as to be between the railing and the traveled track where it struck the bridge; that the auto track was a little west of the center of the road and pretty near astraddle of the west wagon track. Mr. Wilton, the township supervisor and a witness for defendant, testified that he was notified of the accident by the plaintiff's husband shortly thereafter and examined the place where it occurred; saw where the automobile track left the usually traveled track of the road and ran into the hole, and said:

"It broke down the sides as it got into that hole. * * * The nearest point of that hole to the traveled track or in part of the traveled track in the highway would be 3½ feet, I should judge. * * * The hole was 18 inches deep, I ain't certain about the back end of it how deep it was, but along that wing there was a kind of hole with weeds growing in it; * * * the dirt was lower than the wing, and as it went in

from the wing it was still a little lower, I think, east toward the rut, and as it went further east it went up again on the road-bed   *   *   *   the deepest point I could find was 18 inches.   *   *   *   the bank of that hole came right up to the good road."

Mrs. Hamilton, who saw the accident and was called as a witness by defendant, said of the ruts, "there wasn't over maybe 9 inches of fall where they dropped off the bridge" and testified, among other things, that at the time of the accident—

"they were trying to shun that rut.   *   *   *   The automobiles ordinarily shun those ruts of course and this one turned out like any other automobile to shun those ruts   *   *   *   when the automobile got to the bridge, its left wheel was probably a foot or more to the left of that track;   *   *   *   the left front wheel was in this small rut in some burdocks not quite up to the bridge, on an angle;   *   *   *   Wagons travel in one track and autos traveled the other, a wider one; autos never travel the wagon tracks; the wagon tracks went up on the center of the bridge and the auto track was the one that went up west of that on the left side.

"Q. The right auto wheel was in the biggest track?

"A. Yes, sir.

"Q. It was right in the track, was it, or in the center between the two tracks?

"A. In the auto track that would be in the center of the wagon tracks."

These fragmentary excerpts from the testimony are only quoted to the point that Howell's contributory negligence was a question of fact for the jury and not of law for the court. There was ample testimony for defendant from which the jury might in their discretion have found contributory negligence as a conclusion of fact. That issue was submitted to the jury under proper instructions. The court said in part:

"You are instructed that in case you should find from the proofs that the plaintiff's husband was careless in the management of the car so as to cause or aid in causing the accident, such carelessness or negligence

on his part is attributable to plaintiff.  *  *  *  She is therefore bound by his carelessness, if any,  *  *  * she must also convince you by such preponderance of evidence (previously defined) that her husband, the driver of the car, was himself free from any carelessness in handling the car and that the approach to the bridge was so defective and unsafe that it was the proximate cause of the accident."

As a whole the charge very fully covers the law applicable to that controversy.

We find no reversible error in the particulars complained of and the judgment will stand affirmed.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.