# WILLARD E. LANGWORTHY v. THE TOWNSHIP OF GREEN.

*Municipal corporations—Defective highway—Personal injuries—Evidence—Error without prejudice.*

1. Plaintiff was thrown from his wagon while driving along a highway in defendant township which had been in use for upwards of 15 years. It had been turnpiked so as to form a road-bed from 14 to 16 feet in width at the place where the accident occurred, which was caused by plaintiff driving onto a small log, one end of which was firmly imbedded in the earth, while the other was exposed to view. Plaintiff's leg was broken, and he sustained other injuries, for all of which he recovered a judgment of $700 damages against the township, which is reversed for the following errors:

    *a—*In permitting plaintiff to show that an overseer of highways of the road district in which the highway was situated cut off the exposed portion of the log *after* the accident, the jury not being instructed that such fact could not be used as an admission on the part of the township of the dangerous character of the obstruction, and that the road was not reasonably safe for travel by reason of its existence; citing *Iron Works v. Kimball Tp.*, 52 Mich. 149; *Lombar v. Village of East Tawas*, 86 Id. 14.

    *b—*In instructing the jury to ascertain from the evidence if the log was in the condition claimed, followed by the statement that the testimony (which was conflicting) did not vary much in that regard; there being a possibility that the jury may have been misled.

2. The admission of the following testimony offered by plaintiff was not error:

    *a—*The result of a measurement, made four weeks after the accident, of the size and height of the log from the roadway; it being firmly imbedded in the earth, and the accompanying evidence negativing the probability of a change of situation.

    *b—*That plaintiff had to hire a man to do his farm work during the term he was laid up on account of the injury.

    *c—*The opinion of the attending physician as to the probable effects of an injury of the character of that sustained by the plaintiff.

    *d—*The testimony of two farmers who had worked with

| | |
|---|---|
| 88 | 207 |
| 95 | 94 |
| 88 | 207 |
| f122 | 427 |
| 88 | 207 |
| s95 | 93 |
| 123 | 390 |
| 123 | 395 |
| 88 | 207 |
| 135 | 1524 |
| 88 | 207 |
| 143 | 1128 |
| 88 | 207 |
| 152 | 2174 |

plaintiff on the farm in the hay-field and at other kinds of labor, both before and after the accident, as to his ability to do as good a day's work since his injury as before.

 e—The statement of the plaintiff that he was driving as carefully as a man could, followed by a full description of the manner in which he was driving; the rule being that, where the court or jury can make their own deductions, they shall not be made by witnesses, but, where the witness gives fully and succinctly the facts upon which he bases his conclusion, there is no presumption of prejudice.

3. Plaintiff having testified that he had a conversation with the highway commissioner after the accident, and that he did not state to him that his horses got scared at a calf, and did say that he claimed damages against the township, it was competent to ask him on cross-examination what claim he made to the commissioner; but the error committed in excluding the proffered testimony was cured by allowing defendant afterwards to go fully into the matter.

4. The rejection of the following testimony offered in behalf of the defendant was not error:

 a—That the witness had never heard or known of any one being injured on the obstruction before the accident to plaintiff.

 b—Of plaintiff's failure to claim damages against the township prior to bringing suit, which was brought within 15 months after he met with the accident.

 c—The opinion of witnesses whether the highway at the point where the obstruction existed was dangerous, and whether the log was a dangerous obstruction; these questions being for the jury.

 d—How the portion of the road where the accident occurred compared with other portions of the same road in the same township.

 e—Plaintiff's manner and method of driving horses, such manner of driving on other occasions being inadmissible to establish his negligence at time of the accident; citing *Williams v. Edmunds,* 75 Mich. 92; *Boick v. Bissell,* 80 Id. 260.

 f—Whether plaintiff was a drinking man,—whether he was addicted to the use of liquors; the material question being his condition as to sobriety at the time of the accident.

Error to Mecosta. (Palmer, J.) Submitted on briefs October 9, 1891. Decided October 30, 1891.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*M. Brown* and *J. B. Judkins,* for appellant, contended:

1. Plaintiff was entitled to recover whatever his time was worth to him, not what somebody else might charge him to do the work that he was accustomed to do; citing *Huizega v. Lumber Co.,* 51 Mich. 275.

2. The testimony of the attending physician as to the probable effect of the injury, and that if plaintiff had any rheumatic trouble it would be centered in the limb, was incompetent, the rule being that future consequences which are liable to be expected to follow an injury may be given in evidence for the purpose of enhancing damages, but they must be such as in the ordinary course of nature are reasonably certain to ensue, and there being no testimony in this case tending to show that plaintiff had or was liable to have any such trouble; citing *Strohm v. Railroad Co.,* 96 N. Y. 305.

3. Evidence of the claim made to the commissioner in relation to the injury complained of was admissible; citing *People v. Barker,* 60 Mich. 302; *Stewart v. People,* 23 Id. 69.

4. The evidence of the cutting off of a portion of the log after the accident was inadmissible; citing *Iron Works v. Kimball Tp.,* 52 Mich. 149; *Woodbury v. Owosso,* 64 Id. 239.

5. It was competent for witnesses who were familiar with the highway at the place of the alleged obstruction, and had seen the stick many times, to give their opinion whether the road was dangerous on account of its presence and whether the obstruction was a dangerous one, and to state whether they had ever heard it spoken of by any one in the neighborhood as a dangerous obstruction to the highway; citing *Laughlin v. Railway Co.,* 62 Mich. 226; *Evans v. People,* 12 Id. 27; *Beaubien v. Cicotte,* Id. 459; *Railroad Co. v. Van Steinburg,* 17 Id. 99; *Underwood v. Waldron,* 33 Id. 232; *Elliott v. Van Buren,* Id. 49; *Pettibone v. Smith,* 37 Id. 579; *Huizega v. Lumber Co.,* 51 Id. 272.

6. There being a conflict in the evidence as to the condition of the stick, it was error for the court to treat the case as though such conflict did not exist; citing *Weyburn v. Kipp Estate,* 63 Mich. 79; *Hughes v. Railway Co.,* 65 Id. 14.

*Dumon & Cogger,* for plaintiff, contended for the doctrine stated in head-notes 2 and 4, and further:

1. The sixth assignment of error is based upon the admission of the testimony of Charles Fryburg:

"*Q.* Whether you have been path-master of that road-district?

"*A.* Yes, sir.

"*Q.* Where that log is?

"*A.* Yes, sir.

"*Q.* What year was that?

"*A.* In 1889.

"*Mr. Brown:* Just wait a moment. If the theory of the plaintiff in that question is that he wants to bind the township by the knowledge of this path-master, I object to the testimony. I object to it as being incompetent and immaterial for the purpose of binding this defendant; in other words, that the township cannot be bound by the action of this witness acting in the capacity of path-master and overseer of highways for a road-district,—one road-district in a township. He is not a township officer, or anything like one.

"*Mr Dumon:* That isn't important enough to have any trouble about. I propose to prove by this witness that he removed a part of that log, and that a part of it had been cut off before. That is all.

"*The Court:* Ask him that question.

"*Mr. Brown:* I object to it; incompetent and immaterial for the reasons stated.

"*The Court:* I will receive it.

"*A.* When I was path-master part of that log was removed.

"*Q.* Whether any part of it had been cut off before that time?

"*A.* Yes, sir.

"*Q.* Do you know who cut it off? I mean of your own knowledge; I don't ask you what you heard, anybody else say.

"*A.* Well, my own father cut that off.

"*Q.* How high was the north end of that log before it was cut off above the surface of the road?

"*A.* That I don't know for certain.

"*Q.* You have seen it?

"*A.* I have seen it, but I never measured it.

"*Q.* Well, get at it as near as you can.

"*A.* Well, I should think it was, from the bottom of the ground up to the top of the log, it was all of a foot."

The purpose for which the evidence objected to was introduced is not disclosed by the record, yet it was not for the purpose claimed by the defendant's counsel in their brief. The plaintiff had testified that the portion of the log above the surface of the highway had been cut off, and he had it with him in the city at the time of the trial. The log, if exhibited to the jury, would of itself show how large it was, and the proof by this witness of the fact that it had been cut off corroborates the plaintiff to a certain extent. It was claimed by us that the portion of the log which projected above the surface of the road was a dangerous obstruction, not that portion of it which remained buried beneath the surface of the highway, and, while proof that it had been removed might well have been omitted, we do not think it is a reversible error to have

admitted it. The court, the jury, and counsel each and all understood that it was that portion of the log which was struck by the wheel of plaintiff's wagon only that was complained of as a dangerous obstruction to the highway. The authorities cited in the defendant's brief go to the extent only that it would not have been error to have excluded such proof. They do not go to the extent that it is reversible error to have admitted it. The case of *City of Emporia v. Schmidling*, 33 Kan. 485, is more nearly in point than any case cited by defendant's attorneys, and sustains our position.

McGRATH, J. Plaintiff was thrown from his wagon while driving along a highway in the defendant township, between 9 and 10 o'clock at night, July 23, 1888. The highway had been in use upwards of 15 years, had been turnpiked so as to form a road-bed from 14 to 16 feet wide, and was used generally. A log from five to seven inches in thickness lay near the center of the road-bed, running parallel with the line of the road. The southerly end of the log was imbedded in the earth, but from two to five feet of the north end was exposed to view. It had been allowed to remain in that position for from one and one-half to two years before plaintiff was injured. Three witnesses testified that the north end of the log rested upon or near the ground, and 9 or 10 witnesses testified that the top of the log at the north end was from 11 to 18 inches above the ground. Two witnesses testified that they had bunted against the log several times while driving along the highway, and one that his sleigh had caught upon it in attempting to drive over it. The most of the travel was upon the west side of the log, but the road was in good condition on the east side, and was used.

Plaintiff claims that while driving north on the night in question, at a moderate rate of speed, with two other persons in the wagon and on the seat with him, he sitting upon the extreme right of the seat, his horses shied, one

of the wheels struck the log, and he was thrown out of the wagon, and dragged some six or eight rods, breaking his leg and otherwise injuring him, and that the injury to his leg was a permanent one. He says that he knew that the log was in the road, but did not realize that it was at that point, until his horses shied, when he saw the log, but it was too late to avert the collision.

The record contains 54 assignments of error, all of which are discussed in appellant's brief. The first 20 relate to the admission or rejection of testimony.

1. Plaintiff was allowed, under objection, to give the result of a measurement, made four weeks after the accident, of the size and height of the log from the road-bed. Testimony of this character is incompetent in the absence of testimony that the conditions are the same, and there is a likelihood that the situation may be changed; but here the testimony related to a log firmly imbedded in the earth, and accompanying the testimony objected to was evidence negativing the probability of a change of situation.

2. Plaintiff testified that he was unable to do any work until the next spring after he was injured. He was then asked the following question:

"Did you have to hire a man to do your farm work during the time you were laid up from this injury?"

Defendant objected to the testimony as incompetent; that plaintiff could not prove the value of his time in that way. The objection was overruled, and defendant excepted. The witness answered that "it was worth about a dollar and a half a day." The question asked was a proper one. The objection made was premature, and the witness answered, not the question asked, but the suggestion of defendant's counsel.

3. The attending physician was asked his opinion as to

what effect the injury would have upon plaintiff as he grew older, and whether or not the "natural tendency of such a fracture would be to increase his disability as he gets older." The witness replied:

"I am inclined to think that after this length of time his limb will not improve. They usually improve for a year or two, but after this length of time probably the limb will not improve."

"The probability is, if he has rheumatic trouble or any trouble, it will be centered in this injured limb."

The questions were not clear, but the testimony given was admissible. Plaintiff was entitled to show the probable effects of an injury of this character, and it could only be shown by the opinion of a competent physician.

4. Plaintiff, in answer to questions, testified that he had a conversation with one Brown at his house in November after the accident; that he did not state to him that his horses got scared at a calf; that he did say to him that he claimed damages against the township; and he was then asked what claim he made to Brown. This was objected to as no part of the cross-examination, and because immaterial. Objection sustained, and exception by defendant.

"*Q.* Didn't you tell him that you got too far to the right side of the road, and a calf jumped up by a stump on the same side that you were sitting, and scared the team, and they sheered to the left, or words to that effect?

"*A.* No, sir; I didn't.

"*Q.* And threw you out?

"*A.* No, sir; I never told him any such a word.

"*Q.* Didn't you tell him that they drew you by the lines between a stump and the hind wheel of your wagon, and your foot caught in the wheel?

"*A.* No, sir; I never told him such a word.

"*Q.* And isn't that the theory that you gave to him of the injury at that time?

"*A.* No, sir.

"*Q.* Didn't you, in the spring, the next spring, some time in May or June, when he was down in your region

there about your place, say that you had a notion to sue the doctor that set your leg for the injury, claiming that he didn't do his work right?

"*A.* No, sir; I don't think I told him any such thing. I know I didn't.

"*Q.* Do you swear you didn't?

"*A.* Yes, sir; I swear I didn't tell him so.

"*Q.* You swear positively?

"*A.* Yes, sir.

"*Q.* Didn't you say to him that the doctor paid no more attention to you than he would to a nigger or a dog?

"*A.* No, sir; I never said such a word to no man. I had a little conversation."

The question objected to was a proper one. If he made any claim to the highway commissioner different from that now made, or if he gave any other history of the accident, or accounted for it in any other way, it was proper upon cross-examination to draw it out; but defendant's counsel was allowed afterwards, as it will appear by the foregoing, to go into that matter, and the error was without prejudice.

5. Two witnesses (both farmers) who had worked with plaintiff on the farm in the hay-field and at other kinds of labor, both before and after the injury, were asked what they could say as to plaintiff's ability to do as good a day's work since he got hurt as before. This was competent. These men had had opportunities for observation and to make comparisons. They saw him at work, witnessed his movements, and observed the volume of work done. The question involved no matter exclusively within the domain of medical science. Indeed, the testimony of these men, as to the matters to which it related, was of a higher and better quality than that of a physician.

6. Plaintiff, in reply to a question, stated:

"I was driving carefully as a man could. I had been driving on a walk all the way up there. My horses had walked all the way to the water-hole,—that is, the creek

south of Mr. Davis' about 80 rods, or a little better. I got out and watered them there. Went on about 30 or 40 rods, and I met Mr. Reed. I stopped and talked with him a minute, and drove on a walk until—I wouldn't say positively, but I think—a little way beyond Mr. Leonard Davis',—the old gentleman. It is a little down grade there, and nice piece of road. They trotted ·along a little there, and when they got beyond William Davis', just before we came to the log—a nice piece of road there; a smooth, nice piece of road, outside of this log— they started upon a trot, and I had my lines in my hands in good shape, as I always do, and they were trotting along, when they struck this log, slow."

After the examination of the witness had been concluded, counsel for defendant moved to strike out that part of the testimony where witness said he was driving as carefully as he could, but the court declined. The . rule is that, where the court or jury can make their own deductions, they shall not be made by those testifying; but where the witness gives fully and succinctly, as in this instance, the facts upon which he bases that conclusion, there is no presumption of prejudice.

7. A witness was asked by defendant's counsel if he had ever heard or known of any one being injured on that obstruction before this, but the court properly excluded the testimony. *Hodges v. Bearse,* 129 Ill. 87 (21 N. E. Rep. 613).

8. The highway commissioner was asked by defendant to state whether the plaintiff had ever made a claim for damages against the township, and it was insisted that the fact that no claim was made tended to show that the claim now made was an after-thought on plaintiff's part; but the testimony was excluded. Suit had been commenced within 15 months after the injury. There was no dispute as to the fact or extent of plaintiff's injury, and none as to the existence of a log at the point described in the highway. We fail to discover how this

testimony tended in the remotest degree to show that the suit was an "after-thought," and it was properly excluded.

9. Several errors are assigned upon the refusal of the court to admit the opinions of witnesses as to whether the highway at this point was dangerous, or the stick a dangerous obstruction. That question was for the jury. The size and location of the stick or log, as well as the width and character of the highway at that point, were matters susceptible of proof, and did not call for the introduction of the opinions or deductions of witnesses, and in such cases such opinions or deductions should be excluded. *Evans v. People*, 12 Mich. 27, 34.

10. The court rejected testimony as to how that portion of the road compared with other parts of the road in the same township. It was shown that this road had been in use for over 15 years. It was ditched and turn-piked. The abutting land had been cleared up generally. It did not appear that there was a single stump remaining in it. A log had been allowed to remain in the center of it for years. According to a number of witnesses, some of whom had made an actual measurement, one end of the log stuck out of the road-bed 4 or 5 feet, and the top of the log at the end was from 11 to 18 inches above the surface of the road. Others claimed that it was 6 or 7 inches above the ground. The statute[1] expressly exempts roads that have not been in use 10 years, and one of the purposes of this exemption is to protect townships from liability by reason of those ordinary obstructions, such as stumps, roots, and stones, incident to new roads. It cannot be said, however, that in case of a highway which has existed for over 15 years, and been generally used, the township is excusable because the obstructions complained of are common. It is for the jury to say whether this road at this point was rea-

---

[1] How. Stat. § 1446.

sonably safe for travel, and that determination does not, under the state of facts existing here, depend upon the conditions of the road elsewhere.

11. A witness for defendant said that he knew plaintiff, and knew about his habits of driving. Counsel then asked what he could say as to his (plaintiff's) manner and method of driving his horses. The court very properly excluded the testimony. The fact that plaintiff was generally a careful driver could not excuse negligent driving on this occasion, nor could the opinion of a witness as to his habits on other occasions be admitted to establish his negligence on this occasion. *Williams v. Edmunds,* 75 Mich. 92; *Boick v. Bissell,* 80 Id. 260.

12. Plaintiff was asked on cross-examination if he had been drinking that evening, and he replied that he had taken one glass of beer. Defendant introduced a witness, and asked him what he could say as to plaintiff's being a drinking man,—whether he was addicted to the use of liquors. This testimony was properly excluded. The question is, what was plaintiff's condition as to sobriety at the time of the accident? It cannot be assumed that a drinking man, or one addicted to the use of liquors, is always drunk, or always in a condition which excludes the possibility of the exercise of due care.

13. Plaintiff called as a witness one Fryburg, who testified that he was overseer of highways of this road-district in 1889, and who was permitted to testify, under objection, that he cut off the exposed portion of the log in June, 1889. This was error. The evident purpose was to show that the township admitted by this act the defect, the dangerous character of this obstruction, and that the road was not reasonably safe by reason of its existence. After an accident a precaution may be taken which did not suggest itself before the accident, and, in the absence of any instructions from the court guarding

the jury against the use of such testimony as an admission on the part of the township, the admission of the testimony is ground for reversal. *Fulton Iron & Engine Works v. Kimball Tp.*, 52 Mich. 149; *Lombar v. Village of East Tawas*, 86 Id. 14; *Hodges v. Percival*, 132 Ill. 53 (23 N. E. Rep. 423).

14. The other assignments of error relate to the instructions given by the court, and the court's refusal to give defendant's requests, and we find no error, except, perhaps, in that portion of the charge in which the court says:

"Ascertain all these questions from the evidence in the case, and was the log in that road in the condition that it is claimed? And the testimony *pro* and *con* does not vary much in that regard."

The court immediately used the following language:

"Was the highway in consequence unsafe and unfit for public travel, and was it reasonably safe and reasonably fit for travel? And you understand from the evidence as well as I what the real condition was."

The testimony regarding the condition of the log is conflicting, the witnesses fixing its height at from 4 to 18 inches above the road-bed. Upon the other questions referred to by the court there was little variance, but upon this question there was a very material variance, and there is a possibility that the jury may have been misled.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.