HOWARD *v.* CITY OF MELVINDALE

1. MUNICIPAL CORPORATIONS — DEFECTIVE SIDEWALKS — TWO-INCH RULE.

  A municipal corporation, responsible for maintaining a sidewalk, is not liable for damages to a pedestrian caused by a discontinuity in the sidewalk of two inches or less.

2. MUNICIPAL CORPORATIONS — DEFECTIVE SIDEWALK — RAILINGS — TWO-INCH RULE.

  The rule insulating a municipality from liability for injuries caused by a defect of two inches or less in sidewalks under the municipality's control applies only to walking surfaces, and therefore is not applicable to defects in bolts used to fasten railings on a bridge since neither the railings nor the bolts were designed to be walked upon.

3. NEGLIGENCE—EXTENT OF INJURIES—EVIDENCE—QUESTION FOR JURY.

  A question for the jury whether disc space narrowing of plaintiff's vertebrae was caused by a fall, in which the plaintiff suffered fractures, or by natural degeneration, was created where the plaintiff's attending physician testified that although he doubted that there was a causal relationship between the accident and the disc space narrowing there was a possibility of a relationship and where there was lay testimony that the plaintiff's pain did not exist before the fall, but only after it.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 39 Am Jur 2d, Higwhays, Streets and Bridges §§ 202–204, 208, 340, 347, 348, 372, 394.
[3] 22 Am Jur 2d Damages §§ 85, 338, 342.
[4] 22 Am Jur 2d, Damages §§ 22–25.
[5] 20 Am Jur 2d, Costs §§ 57, 60.

4. NEGLIGENCE—EXTENT OF INJURIES—PROOFS—UNCERTAINTY.

   A negligent wrongdoer bears the risk of the uncertainty of the extent of damages where a litigant has established that he has been damaged but the damages cannot be measured with certainty, because it is better that the injured party recover more than he is entitled to than less.

5. DISCOVERY—REFUSAL TO ADMIT—FACTS—COSTS.

   Plaintiffs were not entitled to expenses for proving the dedication, acceptance, ownership, and control of a bridge carrying a roadway proceeding from a city street where the plaintiffs had requested that the defendant city admit that a plat showing the street as dedicated had been accepted and that the dedication had not been vacated, because plaintiffs' requests concerned only the street and not the bridge (GCR 1963, 312; GCR 1963, 313.3).

Appeal from Wayne, George E. Bowles, J. Submitted Division 1 February 3, 1970, at Detroit. (Docket No. 5,908.) Decided October 7, 1970.

Complaint by Donald E. Howard and Gloria J. Howard against the City of Melvindale for damages for injuries from a fall on a bridge. Aetna Casualty and Surety Company intervened as a plaintiff. Judgment on a jury verdict for plaintiffs. Defendant appeals. Plaintiffs cross-appeal the denial of their motion for costs of making proofs. Affirmed.

*Foster, Meadows & Ballard,* for plaintiffs.

*Davidson, Gotshall, Halsey, Kohl, Nelson, Secrest & Wardle* for defendant.

Before: LEVIN, P. J., and J. H. GILLIS and BRONSON, JJ.

LEVIN, P. J. Plaintiff, Donald E. Howard, a police officer, was injured when he tripped on a bolt protruding from the surface of an abandoned concrete

bridge on which he was walking late at night in the course of his duties. He fell from the bridge into a desiccated creek, landing on his back.

The defendant, City of Melvindale, appeals a judgment on a jury verdict in favor of the Howards asserting that the bolt protruded only two inches and that under the "two inch" rule the city is not subject to liability for failing to correct this condition. Additionally, the city contends that medical testimony that an aspect of Howard's back condition was "possibly" caused by the fall is too uncertain to permit jury consideration.

The Howards cross-appeal claiming that the trial judge erred in disallowing their motion under GCR 1963, 313.3 seeking an order requiring the city to pay their reasonable expenses in making proofs required because of the city's refusal to admit the truth of matters stated in a request for admissions. We affirm.

## I.

Howard and another police officer were on a routine patrol near the Laurence street bridge in the city of Melvindale. Howard's suspicions were aroused by a parked car on the opposite side of the bridge and he proceeded to cross the bridge. Steel posts had been erected at each end of the bridge to prevent vehicular traffic from entering, but it continued to be used as a pedestrian crossing.

At one time there were side rails on the bridge, but they were no longer in place. Howard testified that he tripped on a bolt or bolts, $\frac{1}{2}$ inch in diameter and protruding two inches above the surface of the bridge. The bolts were originally used to hold a side rail in place and were three or four inches from the edge of the bridge.

In a long line of decisions the Michigan Supreme Court has held that a municipality is not subject to liability for negligence because of a discontinuity in a sidewalk of two inches or less.[1] The two-inch rule had its origin in a judicial belief that the public authority could not be expected to construct or maintain a perfectly smooth walkway and, therefore, negligence should not be predicated upon relatively minor variations in a walking surface. The rule was applied in a case where the defect was in a metal grating which was a part of the sidewalk.[2] However, neither the bolt upon which Howard tripped nor the railing which it held in place were designed to be walked upon.[3] The trial judge did not err in

---

[1] See *Bigelow v. City of Kalamazoo* (1893), 97 Mich 121; *Northrup v. City of Pontiac* (1909), 159 Mich 250; *Harris v. City of Detroit* (1962), 367 Mich 526; *Ingram v. City of Saginaw* (1968), 380 Mich 547. The cases speak of the "2-inch rule" as meaning both "2 inches or less" and "less than 2 inches"; our disposition of this case does not require a complete review of the cases on that micro-issue.

In *Harris*, Mr. Justice ADAMS, in a dissenting opinion signed by two other justices, reviewed the history of the two-inch rule and urged that it be overruled; see, also, separate opinions of Mr. Justices O'HARA and T. M. KAVANAGH in *Ingram v. City of Saginaw* to like effect. However, a sitting majority of the Court has not as yet been mustered to do so and it remains the law in this state.

The early cases concerned defects in sidewalks constructed of wooden planks. *Bigelow v. City of Kalamazoo, supra; Weisse v. City of Detroit* (1895), 105 Mich 482; *Yotter v. City of Detroit* (1895), 107 Mich 4. The rule was later applied to cement sidewalks. *Jackson v. City of Lansing* (1899), 121 Mich 279.

We add that we do not intend to intimate an opinion as to whether the two-inch rule applies in a case where, as here, the deviation is in the surface of a bridge which is used as a walkway.

[2] See *Northrup v. City of Pontiac, supra*. See, also, *Baker v. City of Detroit* (1911), 166 Mich 597 (water shutoff box); *Biby v. City of Wichita* (1940), 151 Kan 981 (101 P2d 919), (steel plate which was part of a drain gutter); *Harrison v. City of Pittsburgh* (1945), 353 Pa 22 (44 A2d 273) (manhole cover); *Padley, et al v. Village of Lodi* (1940), 233 Wis 661 (290 NW 136), (water main shutoff box); *Bleiman v. City of Chicago* (1942), 314 Ill App 471 (41 NE2d 973), (steel plates which were part of a walkway).

[3] We do not mean to be understood as saying that a bolt designed to hold down a grating or other device which is part of the walking surface of a sidewalk would be within the two-inch rule in a case where the grating or other device was no longer in place;

refusing to extend the two-inch rule, which concerns only variations in walking surfaces, to relieve the city from liability for the protruding bolts and correctly submitted to the jury the question whether the bridge was reasonably safe for public travel.

## II.

Nor did the judge err in his rulings concerning the plaintiffs' expert medical testimony. The plaintiff suffered two fractures in the accident. He also had a disc space narrowing in the vertebrae of his back, but it was unclear whether this was caused by the fall or was attributable to normal degenerative processes.

The treating physician testified that he "doubted" that the disc space narrowing was caused by the accident and he "thought" that it existed before the accident. He added, however, that "it may be related, but I don't know" and that it "could possibly have happened in the accident."[4] The defendant's medical witnesses were of the opinion that the disc space narrowing was not related to the accident.

The defendant relies on *Brininstool* v. *Michigan U. R. Co.* (1909), 157 Mich 172, 180, where the Court declared:

"It is the generally accepted rule that to entitle a plaintiff to recover damages presently for apprehended future consequences of an injury, there must be such a degree of probability of such consequences as to amount to reasonable certainty that they will result from the original injury."

that question is not now before us. *Cf. Cornell* v. *City of Ypsilanti* (1920), 212 Mich 540, 547.

[4] The Howards were entitled during their case in chief to present the entire story regarding Donald Howard's back condition, the unfavorable as well as the favorable, lest the city on cross-examination or rebuttal undermine the veracity of Howard's presentation.

*Brininstool,* thus, dealt with the possible consequences of a known injury. This case concerns known consequences with two possible causes: one, the accident-related fractures; and the other, the disc space narrowing, only possibly accident related.

The *Brininstool* rule was considered by the Supreme Court in *Gilson* v. *Bronkhorst* (1958), 353 Mich 148. In that case a nine-year-old girl had suffered a serious leg fracture in an automobile accident and the question there again was whether the judge erred in submitting her claim for future pain and disability. The medical testimony was that "sometimes" partial disabilities of the kind that she had "may stay on permanently." The Court ruled that even though "no one can tell with fair accuracy whether *the definite fact of partial disability, known at present,* will correct itself" (emphasis supplied), that without regard to the "presence or absence of a professional opinion attesting permanent injury" there was sufficient evidence to submit the child's claim for future pain and disability. In this case of Howard, there is also ample evidence of "the definite fact of partial disability, known at present."

In *Yates* v. *Wenk* (1961), 363 Mich 311, the question, as here, was whether there was a causal connection between the accident and the condition of which the plaintiff was complaining. One of the plaintiff's doctors testified that there was "a possible relation" between the accident and the plaintiff's complaint. There was, indeed, in that case other medical testimony that the accident caused the plaintiff's condition or was the "most probable cause" of the condition, but the defendant asserted that the trial judge erred in allowing the jury to hear the "possible relation" testimony over objection and in refusing to strike it. The Supreme Court faced the issue

squarely and declared that even in the absence of the other medical testimony (p 315) "evidence cast in terms of possibility or probability should be admitted subject to protective instruction by the trial judge in his charge to the jury."

In *Prince* v. *Lott* (1963), 369 Mich 606, the question again was whether the plaintiff's condition was caused by the injury. A physician testified that the condition "could have been caused" by the injury and that the duration of the condition was indefinite. The Court rejected the assertion that the proofs did not meet the *Brininstool-Gilson* "adequacy test" and declared (pp 609, 610):

"Plaintiff's testimony as to his physical condition and suffering during the 2 years leading up to trial and then still continuing, and the medical testimony that his condition could be permanent were sufficient to permit the jury, under the proper instructions which were given, to find for plaintiff on those elements of damage."[5]

The injured plaintiff's testimony was also relied on in *Maada* v. *Johns* (1964), 374 Mich 14, to establish the necessary causal connection between the accident and the complained of condition. In that case the plaintiff did not introduce any medical testimony in support of his claim that his back condition was caused by the accident rather than, as claimed by the defendant, by normal degeneration due to advancing age and a lifetime of strenuous physical labor. Nevertheless, said the Court, the plaintiff could make out his allegation of (p 20) "traumatically caused disability by that which, since

---

[5] In the quoted case the trial judge charged the jury that it might allow damages only for future consequences "which it is reasonably certain he will suffer in the future that is the natural and proximate result of the injury." The jury was similarly instructed in the present case,

release of *Langworthy* v. *Township of Green* (1888), 88 Mich 207, 214, has come to be known as 'before and after' lay testimony."[6] The Court concluded (p 21): "the lay testimony which the jury had a right to believe, conjoined with the * * * honest acknowledgment [of the medical witness called by the defendant] that the collision *possibly* may have 'triggered,' prior to ultimate natural sufferance thereof, the disability of which plaintiff complains and seems to be suffering" was sufficient to support the jury verdict for the plaintiff.   (Emphasis supplied.)[7]

In the present case there was ample "before and after" testimony supporting Howard's claim that both his back pain and the restriction of his activity followed his fall off the bridge.

It is thus apparent that if Howard had not suffered the fractures, if the only apparent cause of his "after" pain and the restriction on his activity was the disc space narrowing, then, under the rule of *Magda* v. *Johns* and the earlier cases, the medical testimony that the fall could possibly have caused the disc space narrowing, coupled with Howard's "before and after" testimony, would have been sufficient to entitle him to have submitted to the jury the disc space narrowing evidence and his claim based on that evidence.  We conclude that Howard is not under a heavier burden of proof because he suffered fractures and, therefore, the possibility that his "after" pain and reduction of activity is attributable solely to the fractures cannot be excluded.

---

[6] Similarly, see *Konieczka* v. *Mt. Clemens Metal Products Co.* (1960), 360 Mich 500, 504.

[7] See, also, *Sarzynski* v. *Stern* (1968), 13 Mich App 158, where, after consideration of *Gilson, Brininstool*, and *Yates*, our Court held that it was not error to allow the jury to award damages for permanent injury on medical testimony that there was "a very definite possibility of a progressing degree, something that is increasing, of what I called yesterday 'traumatic arthritis'." See, also, *Agee* v. *Williams* (1969), 17 Mich App 417, 426; *Bilicki* v. *W. T. Grant Co.* (1969), 382 Mich 319, 325.

Here, unlike *Kaminski* v. *Grand Trunk W. R. Co.* (1956), 347 Mich 417, and *Poledna* v. *Bendix Aviation Corporation* (1960), 360 Mich 129, where the Court considered the standard of proof required where there are alternative theories of causation, there was evidence that Howard's back complaints were attributable to injuries suffered in the fall from the bridge and, thus, that his damages were caused by the city's tortious acts. It has been observed that the certainty requirement "will be relaxed where the *fact* of damage has been established and the question to be decided is the *extent* of that damage". 2 Harper and James, Law of Torts, § 25.3, p 1306. (Emphasis by authors.)

"The law does not require impossibilities; and can not, therefore, require a higher degree of certainty than the nature of the case admits." *Allison* v. *Chandler* (1863), 11 Mich 542, 555.

On the principle that where a litigant can show he has been damaged, but his damages cannot be measured with certainty, that it is better that he recover more than he is entitled to than less, the rule in Michigan is that the risk of the uncertainty is cast upon the wrongdoer, not the injured party. *Routsaw* v. *McClain* (1961), 365 Mich 167, 171.

### III.

On their cross-appeal the Howards contend that the judge erred when he refused to enter an order under GCR 1963, 313.3 requiring the city to reimburse them for their reasonable expenses in proving facts denied by the city when it responded to a request by the Howards for admissions under GCR 1963, 312.

Rule 313.3 provides that if a party served with a request for admissions denies the truth of the matter

concerning which an admission is requested and the party requesting the admission proves it to be true, an order shall be made requiring the denying party to pay to the requesting party his reasonable expenses in making such proof unless the court finds that the admission sought is of no substantial importance or "there were good reasons for the denial".

One of the issues in the case was whether the defendant city had any responsibility for the condition of the bridge, and that turned on whether the bridge had been dedicated to the public.

The roadway over the bridge had emanated from Laurence street. The Howards requested an admission that a plat, showing Laurence as a dedicated street, had been accepted by the city and that no ordinance or resolution had been adopted by the city vacating Laurence and that no notice had been published of a proposed vacation of Laurence. In response, the city admitted that the bridge was in the city and that Laurence had been dedicated, but denied that the bridge was an extension or a part of Laurence and asserted that the bridge was never dedicated and that the plat did not show either the bridge or the creek crossed by the bridge.

The motion for expenses filed by the Howards asked that they be recompensed for all the expenses they incurred by reason of the city's refusal to admit the "dedication, acceptance, ownership and control of the Laurence Street bridge". The motion thus asked for reimbursement of expenses incurred in proving facts in addition to those covered by the request for admissions. The city was not asked to admit that the bridge itself had been dedicated and that such dedication had not been vacated. The pertinent requests were that the *plat* had been accepted and that Laurence *street* had not been vacated. The judge did not err in refusing to order the city to

reimburse the Howards for the entire expense of proving that the bridge had been dedicated and that such dedication had not been vacated. The record does not provide a basis for determining the portion of the claimed expense incurred in proving the acceptance of the plat and that Laurence street had not been vacated.[8]

---

[8] The Howards contend, in their brief filed in our Court, that by failing to admit, the city in effect denied that the plat was accepted and that Laurence had not been vacated, thereby forcing the Howards to prove both the acceptance of the plat and the nonvacation of Laurence.

Actually, under Rule 312, the effect of a failure to deny specifically is that the matter is taken as admitted: "Each of the matters of which an admission has been requested *shall be deemed admitted* unless * * * the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement *denying specifically* the matters of which an admission is requested" or a statement of why he cannot admit or deny, or a statement of written objections. GCR 1963, 312. (Emphasis supplied.)

GCR 1963, 312 and 313 are based on Fed Rules Civ Proc, 36(a), 37(c). Some courts have held that a requesting party is not entitled to expenses where the response is equivocal or otherwise inadequate because such a response is not a specific denial and hence, under the rule, is deemed an admission *Southern Railway Co.* v. *Crosby* (CA 4, 1953), 201 F2d 878; *Riordan* v. *Ferguson* (CA 2, 1945), 147 F2d 983, 986 fn; *Hunter* v. *Erie Railroad Company* (1956), 43 NJ Super 226 (128 A2d 304), with the result that the requesting party need not have proved the matter equivocally or inadequately answered because it was taken as admitted *West Kentucky Coal Co.* v. *Walling* (CA 6, 1946), 153 F2d 582; *Water Hammer Arrester Corporation* v. *Tower* (CA 7, 1949), 171 F2d 877. Such holdings are in accord with the express language of rule 313, which literally provides for reimbursement of the expenses of proving the truth of the matter only where the responding party "serves a sworn denial."

Such holdings have been criticized as unduly rigid. Finman, The Request for Admissions in Federal Civil Procedure, 71 Yale LJ 371, 430–433 (1962). But what is lost in flexibility at the posttrial stage in the awarding of expenses is an advantage at the pretrial phase. If equivocal answers are treated as automatic admissions, there will be fewer equivocal answers and the purpose of rules 312 and 313 may be realized with less judicial effort.

The Federal decisions are, however, far from consistent. Equivocal and inadequate answers have in other cases been held to be denials. *Bluff Creek Oil Company* v. *Green* (CA 5, 1958), 257 F2d 83 (issue was whether a summary judgment should have been granted); *Bertha Building Corporation* v. *National Theatres Corp.* (EDNY, 1954), 15 FRD 339 (inadequate answer). *Cf. Hartley & Parker, Inc.* v. *Florida Beverage Corporation* (CA 5, 1965), 348

Affirmed. No costs, neither party having prevailed in full.

All concurred.

---

F2d 161 (unverified denial cannot be relied upon as an admission after the trial evidence is closed). And there is dictum that the remedy for an equivocal response is a motion for an allowance of the expenses of proving the truth of the matter. *Bluff Creek Oil Company* v. *Green, supra; Bertha Building Corporation* v. *National Theatres Corp., supra.*

The Federal rules have recently been amended to permit a party requesting admissions to move for a determination of the sufficiency of the answers or objections so that he can know before the trial whether the court will treat an equivocal or inadequate response as an admission or a denial, and to authorize the awarding of expenses of proof where the answering party has not *admitted* the truth of the matter proved at trial (formerly, as previously mentioned, the rule expressly provided for the awarding of expenses only if the matter had been *denied*). See Fed Rules Civ Proc, 36(a), 37(c), as amended effective July 1, 1970, and accompanying committee comment reprinted 48 FRD 487, 530, *et seq.* Before these amendments, the Federal courts were sharply divided as to whether a motion to test the sufficiency of an answer was permissible. See 2A Barron and Holtzoff, Federal Practice and Procedure, § 837, p 521; 4 Moore's Federal Practice, § 36.07, p 2756.

A court of general jurisdiction enjoys the power to do many things not expressly covered by a court rule. (See *Hunter* v. *Erie Railroad Company, supra;* Developments in the Law-Discovery, 74 Harv L Rev 940, 969 (1961). *Cf. Guastello* v. *Citizens Mutual Insurance Company* (1968), 11 Mich App 120, 137.) Surely a circuit court may entertain and rule upon the sufficiency and effect of answers to requests for admissions before the trial itself.

In this case if the Howards had brought such a motion the apparent misunderstanding as to what was being asked and the intent of the answers made and the effect of an express admission might have been cleared up. Where the response is equivocal, frequently more will be gained by attempting to obtain clarification and resolution before the trial than can be achieved in a post-trial contest concerning the bona fides of an opposing party's responses. Further, if a motion testing the sufficiency of an equivocal answer is filed this would facilitate the post-trial appraisal of the justification offered for refusing to admit. Indeed, without clarification before trial, a court may tend to conclude that the refusal to admit was not improper. See *United States* v. *Classified Parking System* (CA 5, 1954), 213 F2d 631; *McHugh* v. *Reserve Mining Company* (ND Ohio, 1961), 27 FRD 505, 507.