**STONEMEN GROUP, INC., Plaintiff,**

v.

**METALFORMING TECHNOLOGIES, INC., Defendant.**

No. CIV. 02–40291.

United States District Court,
E.D. Michigan,
Southern Division.

March 22, 2005.

Timothy E. Galligan, Timothy E. Galligan Assoc., Bloomfield Hills, for Stonemen Group, Incorporated, Plaintiff.

Philip Cwagenberg, Ishbia & Gagleard, Birmingham, for Metalforming Technologies, Incorporated, Defendant.

### ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION IN LIMINE

GADOLA, District Judge.

Before the Court is Defendant's motion for partial summary judgment and Defendant's motion in limine. Defendant filed both motions on January 30, 2004. For the following reasons, the Court will deny both motions.

### I. BACKGROUND

This action involves the issue of whether Defendant owes sales commissions to Plaintiff. The amended complaint contains two counts: (1) breach of contract and (2) violation of the Michigan's Sale Representative Commissions Act under Michigan Compiled Laws § 600.2961. These counts involve sales of products to three customers: Magna, Summo Steel, and Continental Teves. The parties previously appeared before the Court for a final pretrial conference. At that conference, the parties noted that a legal issue remained to be adjudicated, even though no summary judgment motions had been filed by either party. In order to simplify the trial and to facilitate a possible settlement of the case, the Court allowed the filing of a motion after the dispositive motion deadline. The parties articulated the legal issue as follows:

> The applicability, if any, of the Michigan *Sales Representative Commission Representative Act* [sic, should read: "Michigan Sales Representative Commissions Act"], MCL 600.2961, given [that]: some, or all, of the sales were for products produced and delivered outside of the state of Michigan. [The Court then wrote in:] *This issue* will be resolved by a motion for summary judgment or dismissal to be filed by 1/30/04. Response by 2/6/04.

Final Pretrial Order at ¶ 6, filed Jan. 22, 2004 (emphasis added). Essentially, the parties contemplated disposing of the issue of whether the Michigan Sales Representative Commissions Act applies to sales made outside of Michigan. Defendant, however, filed a motion for summary judgment on a broader issue than the issue

articulated in the final pretrial order; Plaintiff only responded to the narrower issue. A hearing was held regarding this motion on June 22, 2004. At the hearing, the Court allowed Plaintiff to file a supplemental response addressing the broader issue and also allowed Defendant to file a supplemental reply.

Contemporaneous with Defendant's motion for partial summary judgment, Defendant also filed a motion in limine seeking the preclusion of any argument, testimony or evidence of Plaintiff's future damages on the ground that such damages are speculative. Plaintiff filed a response to Defendant's motion in limine. The Court determines that an additional hearing is not necessary to facilitate the adjudication of this matter. Local R. E.D. Mich. 7.1(e).

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Comm'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Ze-*

*nith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd,* 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995).

## B.  Analysis

■ The Court will first address the issue anticipated by the final pretrial order of whether the Michigan Sales Representative Commissions Act ("the Act") applies to sales made outside of Michigan. The Act provides that principals shall pay sales representatives for commissions in accordance with the contract, past practices, or business custom within 45 days after the commission is due. Mich. Comp. Laws 600.2961(2)-(5). The Act also provides for penalties if the commissions are not paid by within 45 days of the due date. *Id.*

The Act defines "principal" as a person that (i) "[m]anufactures, produces, imports, sells or distributes a product *in this state* " or (ii) "[c]ontracts with a sales representative to solicit orders for or sell a product *in this state.*" Mich. Comp. Laws 600.2961(1)(d) (emphasis added). The statute also provides that if the contract or past practices do not provide for a due date for the commission, the due date shall be determined by "the custom and usage prevalent *in this state.*" Mich. Comp. Laws 600.2961(3). Defendant argues that this language means that the Act only

applies to sales made *"in this state."* It is undisputed that the products at issue were sold outside of Michigan, to customers in Iowa, North Carolina, and Canada.

The Michigan Courts have not addressed whether the Act applies to out-of-state sales in a published opinion. In an unpublished decision, however, the Michigan Court of Appeals did address this issue. *Cherry v. Am. Technical Servs.,* No. 213888, 217620, 2000 WL 33403005 (Mich.Ct.App. Nov. 3, 2000). In reversing the lower court, the Michigan Court of Appeals determined that the Act applied to commissions earned on sales outside of Michigan. *Id.* at *3; Pl.Ex. 5. The Michigan Court of Appeals reasoned:

> The statute requires that "all commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination." MCL 600.2961(4). We believe that by virtue of the fact that the statute references *all* commissions, the statute requires that *all commissions, no matter where earned,* be paid to a sales representative by a principal. MCL 600.2961(1)(d) defines a "principal" as a person or entity that: (1) "manufactures, produces, imports, sells, or distributes a product in [Michigan]," or, (2) "contracts with a sales representative to solicit orders for or sell a product in [Michigan]." The trial court misread this language to mean that the statute was only applicable to commissions earned in Michigan. The correct reading of the definition of "principal" is to only identify those persons who are subject to the statute's provisions. After a person is determined to be a principal within the meaning of the statute, then all commissions earned by a sales representative may be recovered under the statute. Therefore, we remand this case to the trial court.

*Id.* at \*4 (emphasis added). The Court finds this reasoning persuasive. The definition of principal identifies the persons who are subject to the Act; the language does not restrict the particular sales involving the principal. The plain language of the statute specifically provides for the payment of "all commissions," regardless of the location of the sale.

Another Court in this district has reached the same conclusion. Judge Rosen wrote that "Defendant has not proffered nor has this Court independently found, any case law or legislative history supporting its 'in-state-only' construction of the statute." *Kenneth Henes Special Projects Procurement, Marketing, & Consulting Corp. v. Continental Biomass Indus., Inc.,* 86 F.Supp.2d 721, 728 (E.D.Mich.2000). Judge Rosen then concluded that "the Legislature's intent appears [to] have been to assist Michigan sales representatives in recovering commissions they have earned, *regardless of where they solicited the orders or sold the product." Id.* at 729 (emphasis added).

Defendant argues that these opinions do not strictly construe the statute, as is required for a statute that imposes penalties. *See Goetz v. Black,* 256 Mich. 564, 572, 240 N.W. 94 (1932). The Court determines, however, that the above reasoning does strictly and accurately construe the plain language of the statute. The Court will therefore deny partial summary judgment on this issue.

■ This Court next addresses the broader issue addressed in the supplemental briefing. Defendant seeks partial summary judgment on the issue of whether Plaintiff is entitled to a commission for the sale of "Booster Shell" parts to Continental Teves. According to Plaintiff, Defendant was awarded the sales contract with Continental Teves in the second half of 2001. Pl. Resp. at 9 (Jul. 7, 2004). Yet, according to Defendant, the Continental Teves sale was obtained in July of 2002.[1] Def. Reply at 4; Def. Ex. Q. Defendant argues that Plaintiff's efforts, as a matter of law, do not entitle Plaintiff to commissions under the language of the contract. Defendant relies on a 1997 "Sales Representative Agreement" between the parties which provides for commissions to be paid "for Products *sold by*" Plaintiff. Def. Ex. A at ¶ 3.1. Defendant argues that the plain language of "sold by" means that Plaintiff is only entitled to a commission if Plaintiff provides a final, agreed upon purchase order. Defendant also relies on identical language in a 2001, unsigned draft of another Sales Representative Agreement to argue that the parties were using the same operative language in their continuing negotiations. Def. Ex. B at ¶ 3.1.

Defendant further argues that simply "procuring" a client, without a final deal, is insufficient to earn a commission. Case law has developed a "Procuring Cause Doctrine," which allows an agent to recover commissions for sales "whether or not he has personally concluded and completed the sale, it being sufficient if his efforts were [the] procuring cause of the sale." *Reed v. Kurdziel,* 352 Mich. 287, 294, 89 N.W.2d 479 (1958) (citations omitted). Defendant argues that the doctrine is interpreted narrowly and is limited to procuring the particular order, not just the customer. *See Roberts Assocs., Inc. v.*

1. In support of the contention that the sale was completed in July, 2002, Defendant submits a letter from Continental Teves announcing its selection of Defendant as the production supplier for certain parts. The letter is dated July 17, 2002. Def. Ex. Q. The letter, however, is unsigned and refers to part numbers that do not match the part numbers in the letter Defendant wrote to Plaintiff while Plaintiff was in the process of negotiating with Continental Teves. *See* Def. Ex. C.

*Blazer Int'l Corp.,* 741 F.Supp. 650 (E.D.Mich.1990).

In the present motion for partial summary judgment, Defendant claims that the Continental Teves sale was accomplished by Defendant's own employees, not by Plaintiff. Defendant claims that Plaintiff did not procure the particular order or close the deal, but merely created the opportunity by putting Defendant in contact with Continental Teves. Defendant therefore argues that Plaintiff was not the procuring cause of the sale and is not entitled to commissions based on the Procuring Cause Doctrine or under the contract language.

Plaintiff responds that the contract relied on by Defendant, the 1997 Sales Representative Agreement, did not extend to Continental Teves or the product at issue, but was instead limited to one specific customer, Magna, and two specific products referred to as "seat reinforcements." Def. Ex. A at ¶ 1.2. Plaintiff also argues that the 1997 contract had expired in June of 2000 because the products covered by the contract were no longer in production. Id. at ¶ 1.4.

Plaintiff maintains that, despite there being no written agreement covering commissions related to the sale of "Booster Shell" parts to Continental Teves, Defendant expressly agreed to pay Plaintiff a commission on sales to Continental Teves on a "life of the part" basis. *See* Pl. Resp. at 6–8. According to Plaintiff, Defendant owed Plaintiff a commission on previous sales to Magna, but refused to pay the agreed-upon 5% rate, wishing instead to pay a rate of 3.75%. During a meeting held in November, 2000, Plaintiff proposed as a concession for the rate reduction on the Magna sales that Defendant grant Plaintiff a commission on sales to Continental Teves on a life of the part basis. Plaintiff asserts that the parties reached an oral agreement that was memorialized by De-

fendant's 2001 draft of the new Sales Representative Agreement, which reflected the rate reduction on Magna sales and included the addition of Continental Teves. *See* Def. Ex. B at 11 and 20.

Supporting Plaintiff's contention that Defendant agreed to commissions on sales to Continental Teves are two letters Defendant provided to Plaintiff to enable Plaintiff to give a price quotation to Continental Teves. The letters state that "[t]hree percent (3%) has been included in all piece prices to cover commissions." *See* Pl.Ex. 4 (Jul. 7, 2004). Plaintiff claims that it is a past practice of Defendant to inform Plaintiff of the commission amount in this manner. *See* Pl.Ex. 2 (Jul. 7, 2004). In addition, Plaintiff claims that Defendant recognized the November, 2000 agreement by assigning the Continental Teves account to Plaintiff in Defendant's "Priority Target List." *See* Pl.Ex. 5 (Jul. 7, 2004).

Plaintiff also disagrees with Defendant's characterization of Plaintiff's involvement in the Continental Teves sale. Plaintiff alleges that it first learned of Continental Teves's potential as a customer in March, 2000 and continually communicated with Continental Teves for approximately one year before Continental Teves asked Plaintiff for a price quotation. After providing Defendant with the Continental Teves opportunity, Plaintiff alleges that he was told that the final negotiations would take place between the upper management of Defendant and Continental Teves. Defendant disputes this account. Defendant maintains that the business Plaintiff was seeking from Continental did not come to fruition, and what did come to fruition was business resulting solely from the efforts of Defendant. *See* Def. Ex. F and Q.

Plaintiff argues that a "procuring cause" analysis is inapplicable because Defendant expressly agreed to pay Plaintiff a commission on sales to Continental Teves on the life of the part basis. *See Clark Broth-*

ers Sales Company v. Dana Corporation, 77 F.Supp.2d 837, 849 (E.D.Mich. 1999)("Where the parties have expressed the terms of their 'fair deal' in an express agency agreement, there is no basis for a court to impose different or additional terms such as a 'procuring cause' standard."); Roberts Assocs., Inc. v. Blazer Int'l Corp., 741 F.Supp. 650, 652 (E.D.Mich.1990).

Plaintiff rests its claim of entitlement to a commission on the alleged oral agreement reached during the November, 2000 meeting between Plaintiff and Defendant, not the 1997 Sales Representative Agreement. In determining whether an enforceable agreement was reached, the Court must use the "objective theory of assent" and look to "all the relevant circumstances surrounding the transaction, including all writings, oral statements, and other conduct by which the parties manifest their intent." Rood v. General Dynamics Corp., 444 Mich. 107, 119, 507 N.W.2d 591 (1993).

■ After examining the evidence submitted by both parties, the Court concludes that summary judgment is inappropriate on the issue of whether Plaintiff is entitled to a commission on the sale of Booster Shells to Continental Teves. Although contract interpretation is largely a matter of law, to be determined by the Court, this is only true where the contract terms are clear and unambiguous. Grand Trunk W. R.R., Inc. v. Auto Warehousing Co., 262 Mich.App. 345, 350, 686 N.W.2d 756 (Mich.Ct.App.2004). Here, the Court finds that there exist genuine issues of material fact surrounding the existence and terms of the contract Plaintiff alleges was formed during the November, 2000 meeting. Because a reasonable jury could find that a contract did exist which entitled Plaintiff to a commission on the sale of Booster Shell parts, the Court will deny Defendant's motion for partial summary judgment on this issue as well. See Bur-

land, Reiss, Murphy & Mosher, Inc. v. Schmidt, 78 Mich.App. 670, 674, 261 N.W.2d 540 (Mich.Ct.App.1977)(holding that "the cardinal rule of contract law is to effectuate the intent of the parties, and ... summary judgment is inapplicable where the question of intent plays a leading role").

## III. DEFENDANT'S MOTION IN LIMINE

■ The Court will now address Defendant's motion in limine. In its motion, Defendant requests that the Court exclude "any argument, testimony or purported evidence of future commission loss, as speculative, at trial." Mot. at 1. Defendant argues that, although the Booster Shell part for which Plaintiff is seeking a commission is currently under production for Continental Teves, there is no certainty that the part will be sold in the future, because Continental Teves is under no obligation to continue to purchase the part. Any determination of future commission loss requires a determination of whether Continental Teves will or will not order additional parts as well as a determination as to the amount of any such order. Because Continental Teves is under no obligation to order additional parts, Defendant argues, any determination of future commission loss would be speculation and conjecture. As Defendant points out "it is well established that a plaintiff is not entitled to an award of damages unless both the fact of damages and the amount of damages are established with reasonable certainty; neither may properly be based upon mere speculation, guess, or conjecture." Zirin Laboratories International, Inc. v. Mead–Johnson & Co., 208 F.Supp. 633, 635 (D.Mich.1962). A plaintiff must produce a method by which damages can be calculated with reasonable certainty; "Uncertainty as to the fact of legal damages ... is fatal to recovery." ADR N. Am., L.L.C. v. Agway, Inc., 303 F.3d 653,

660 (6th Cir.2002)(quoting *Wolverine Upholstery Co. v. Ammerman,* 1 Mich.App. 235, 135 N.W.2d 572, 576 (Mich.Ct.App. 1965)).

Plaintiff responds that the determination of future commission loss is no more difficult than the determination of future lost profits, for which recovery is allowed under Michigan law. *See American Anodco, Inc. v. Reynolds Metals Company,* 743 F.2d 417, 424 (6th Cir.1984)("It is clear that loss of future profits is permitted as an element of damages in beach of contract actions when they can be established with reasonable certainty."). In *American Anodco,* the Sixth Circuit upheld an award for future lost profits, despite the fact that the contract "listed no quantity... and was silent as to the duration of the order." *Id.* at 419. In *Lorenz Supply Co. v. American Standard, Inc.,* 100 Mich.App. 600, 300 N.W.2d 335 (Mich.App.1980), *aff'd,* 419 Mich. 610, 358 N.W.2d 845 (1984), the Michigan Court of Appeals held:

> Lost profits resulting from a breach of contract are proper items of loss to be considered by a jury in determining damages. However, lost profits must be subject to a reasonable degree of certainty and cannot be based solely on conjecture and speculation. This does not imply that lost profits must be determined to a mathematical certainty. Even where lost profits are difficult to calculate, and are speculative to some degree, they are still allowed as a loss item.
> Furthermore, Michigan case law indicates that doubts as to the certainty of damages must be resolved against the wrongdoer. In *Howard v. City of Melvindale* [27 Mich.App. 227, 183 N.W.2d 341 (1970)], this Court said:
>> "On the principle that where a litigant can show he has been damaged, but his damages cannot be measured with certainty, that it is better that he re-

cover more than he is entitled to than less, the rule in Michigan is that the risk of the uncertainty is cast upon the wrongdoer, not the injured party."

*Lorenz Supply,* 100 Mich.App. at 611–612, 300 N.W.2d 335 (citations omitted). In *Lorenz Supply,* an award of future losses was calculated based on a history of past sales. *Id.* at 613, 300 N.W.2d 335. In *Fera v. Village Plaza, Inc.,* 396 Mich. 639, 242 N.W.2d 372 (1976), a case involving a breach of a commercial lease, the Michigan Supreme Court held that an award for future lost profits was determined with reasonable certainty even though the business in question was prevented from ever opening. *Id.* at 646–48, 242 N.W.2d 372.

In its response, Plaintiff has listed evidence it expects to offer in order to prove future lost commissions to a reasonable certainty. *See* Resp. at 8–9. Based on the above cited cases, and the fact that Plaintiff's future commission loss is nothing more than Plaintiff's future lost profits, such evidence is more than sufficient to allow the determination of damages to go to the jury. The Court finds that Plaintiff's expected evidence takes the determination out of the realm of speculation and will enable a determination of future commission loss to a reasonable degree of certainty. Therefore, the Court will deny Defendant's motion in limine.

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion for partial summary judgment [docket entry 23] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's motion in limine [docket entry 22] is **DENIED.**

**SO ORDERED.**