SHWAYDER CHEMICAL METALLURGY CORPORATION v BAUM

1. TORTS—TRADE SECRET—SAFE PLATES.

A patented process for making safe plates is not a trade secret.

2. APPEAL AND ERROR—DAMAGES—BASIS FOR ASSESSMENT.

In an action for accounting of profits made, an appellate court will set aside a damage award where the record contains no evidence that an accounting was made by the court.

3. INJUNCTION—PATENTED PROCESS—ALTERNATIVE RELIEF—INFRINGEMENT.

Injunctive relief will not be granted with respect to a patented process because the process is fully protected and suit for infringement is adequate relief.

4. INJUNCTION—FIDUCIARY RELATIONSHIP—FORMER EMPLOYEE—BREACH OF DUTIES.

In a suit by a corporation against an ex-officer and a competitive firm organized by the ex-officer relief will be granted enjoining the defendants from competing with plaintiff as to customers obtained from plaintiff's customer lists and from manufacturing any product in competition with plaintiff which defendants are able to manufacture because of information obtained from plaintiff by the defendant ex-officer as a result of the fiduciary and confidential relationship which that defendant had with plaintiff, and any damages established by plaintiff corporation should be assessed against both defendants.

Appeal from Macomb, Walter P. Cynar, J. Submitted Division 2 February 12, 1973, at Lansing. (Docket No. 13521.) Decided February 23, 1973. Leave to appeal denied, 389 Mich 817.

Complaint by Shwayder Chemical Metallurgy

REFERENCES FOR POINTS IN HEADNOTES

[1] 52 Am Jur, Trademarks, Tradenames and Trade Practices § 7.
[2] 5 Am Jur 2d, Appeal and Error § 965.
[3] 42 Am Jur 2d, Injunctions § 138.
[4] 42 Am Jur 2d, Injunctions §§ 115–117.

Corporation against Charles S. Baum and Permanence Corporation for injunctive relief, return of documents, accounting of profits and damages for the breach of a fiduciary relationship. Judgment for plaintiff against defendant Baum only. Baum appeals and plaintiff cross appeals. Affirmed in part and reversed and remanded with respect to the damage award.

*Cullen, Settle, Sloman & Cantor* and *Alan P. Goldstein,* for plaintiff.

*Sugar, Schwartz, Silver, Schwartz & Tyler* (by *A. Albert Sugar* and *David L. Nelson)* and *McGlynn, Reising, Milton & Ethington* (by *Martin J. Adelman, Allen M. Krass,* and *Thomas N. Young),* for defendants.

Before: McGREGOR, P. J., and QUINN and PETERSON,* JJ.

QUINN, J. In 1963, defendant Baum graduated from Michigan State University School of Accounting. His formal education did not cover chemicals, metallurgy, or engineering. In 1968, he was employed by a certified public accounting firm which plaintiff employed to make a financial study and analysis of its operation. The firm assigned defendant Baum to this job. Prior to this assignment, Baum had no knowledge of or experience with the manufacture of tungsten products, grit, safe plates, or powdered tungsten-carbide products.

Since about 1956, plaintiff has been in the business of processing scrap tungsten carbide into tungsten-carbide grit. One of the uses plaintiff makes of grit is in a patented process of manufacturing safe plates, a product used by safe manufac-

---

* Circuit judge, sitting on the Court of Appeals by assignment

turers to protect safe lock mechanisms and bolts from burglar tools and equipment. The process involves imbedding the grit in a metal matrix within a steel envelope.

Defendant Baum left his employment with the certified public accounting firm during 1968 and formed his own consulting business. He was hired by plaintiff to make a thorough in-depth study of the financial, cost accounting, and general production operation of plaintiff's business. January 15, 1969, plaintiff hired Baum full time as business manager. January 18, 1969, Baum signed an agreement to maintain secrecy of secret or confidential information learned in his full-time employment by plaintiff and not to use such information adversely to plaintiff. Baum resigned his position with plaintiff October 10, 1969 and left this employment. He took or had in his possession quantities of files, papers, and reports of plaintiff without permission of plaintiff and unbeknown to plaintiff. (A complete list of the items taken appears in the appendix to this opinion.)

Within a few weeks of his resignation from plaintiff, defendant Baum began to organize a new business to manufacture and sell grit and safe plates in competition with plaintiff. December 18, 1969, plaintiff filed this action against Baum for injunctive relief *(ex parte* and permanent), for return of all documents obtained from plaintiff, accounting for all profits realized by Baum and lost by plaintiff by reason of Baum's breach of duties and obligations, and damages, actual and exemplary. An order to show cause and temporary restraining order entered the same day and a preliminary injunction entered December 29, 1969. On the latter date, an order entered requiring Baum to produce all documents obtained from the plaintiff.

December 4, 1969, Baum issued a prospectus for Permanence Corporation to be formed for the purpose of manufacturing and selling tungsten-carbide products, including grit and safe plates. This corporation was formed and articles of incorporation were filed February 2, 1970. By stipulation of the parties, an order entered February 16, 1970 in the Baum litigation adding Permanence Corporation as a party defendant. March 18, 1970, plaintiff filed an amended complaint seeking the same relief against Permanence Corporation as was sought in the original complaint against Baum.

Following trial, the trial judge filed a comprehensive opinion in which he made the following findings of fact in addition to those facts found in the preceding factual background statement:

1. From the time defendant Baum first worked at plaintiff's business as an employee of the certified public accounting firm through the period that he was business manager of plaintiff, defendant Baum obtained intimate knowledge of all facets of plaintiff's business.

2. All of the information given by plaintiff to Baum or obtained by Baum from his contacts with plaintiff was given or obtained in confidence, and Baum was acting in a fiduciary and confidential capacity at all times.

3. Baum had no right to take from plaintiff the items detailed in the appendix and much of the information those items contained was useful to competitors of plaintiff and was used by Baum in organizing Permanence Corporation.

4. After leaving plaintiff, Baum contacted a number of employees, present and former, of plaintiff to induce them to join Permanence Corporation. Stuart, an officer of plaintiff through De-

cember 31, 1969, commenced work for Permanence Corporation as a vice-president January 1, 1970. The prospectus of December 4, 1969 listed Stuart as a vice-president of Permanence Corporation. Wendler, a former employee of plaintiff, worked with Baum before and after the incorporation of Permanence. The personal secretary of plaintiff's president worked part time for Baum.

5. Baum contacted plaintiff's scrap sources and bid competitively against plaintiff for scrap. Baum contacted plaintiff's safe-plate customers and offered to sell them his safe plate at a price below plaintiff's price to these customers.

6. Baum was the majority stockholder of Permanence Corporation and he made a calculated effort to enter a business similar to plaintiff's business by compiling and accumulating data and information concerning plaintiff's business while he stood in a confidential relation to plaintiff.

As conclusions of law, the opinion held:

1. Baum stood in a fiduciary and confidential relationship with respect to plaintiff, and he breached the duties arising from that relationship.

2. The making of grit and safe plates is not a trade secret.

3. Plaintiff was entitled to damages in the amount of $35,000 against defendant Baum only.

Judgment entered December 7, 1971 awarding plaintiff $35,000 damages, costs, and attorney fees against Baum, dismissing the complaint against Permanence Corporation, and denying damages, costs, and attorney fees to Permanence Corporation.

Defendant Baum appeals from that judgment. Plaintiff cross-appeals contending it is entitled to the injunctive relief requested and that Permanence Corporation should be liable for damages as

well as Baum and that the injunctive relief should also apply to Permanence Corporation.

Our review of the record discloses ample support for all factual findings of the trial judge.

The legal conclusions of the trial court that Baum stood in a fiduciary and confidential relationship to plaintiff and that Baum breached the duties and obligations arising from that relationship are sustained by 2 Restatement Agency 2d, § 396(b), p 223; *New England Overall Co, Inc v Woltmann,* 343 Mass 69; 176 NE2d 193 (1961).

The making of grit by crushing scrap is a process well known in the industry and it is not a trade secret. Plaintiff's process of making safe plates is not a trade secret because the process is patented, *Glucol Manufacturing Company v Schulist,* 239 Mich 70, 75 (1927).

We find no support in the record for the $35,000 damage award. Plaintiff asked for an accounting of profits made by defendants and lost by plaintiff by reason of the confidential material Baum took from plaintiff as a basis for damages. The record contains no evidence of such an accounting. If the award was for exemplary damages, the basis therefor is not indicated. The damage award is reversed and plaintiff shall be afforded the opportunity to establish its damages, actual and exemplary.

As to injunctive relief, with respect to the safe-plate manufacturing process, none is or should be granted. As a patented process, it is fully protected and suit for infringement is adequate relief. On the basis of *New England Overall Co* and *Glucol Manufacturing Co, supra,* defendants should be enjoined from competing with plaintiff as to customers they obtained from plaintiff's customer lists and from manufacturing any product in competition with plaintiff which defendants are able to

manufacture because of information obtained from plaintiff by Baum.

Whatever damages plaintiff may establish should be assessed against both defendants, *Sperry Rand Corp v Electronic Concepts Inc,* 325 F Supp 1209 (ED Va, 1970).

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. Neither party has prevailed and no costs are awarded.

All concurred.

## *APPENDIX*

*List of Compilations and Files Taken by Baum from Shwayder, Without Permission*

| Plaintiff's Exhibit No. | Description |
| --- | --- |
| 1 | 140 Page, Computerized Scrap Mailing List |
| 2 | 248 Page, Computerized Raw Material Status Report of about 3700 Selected Scrap Sources |
| 3 | 50 Page, Master Copy of Operations Analysis (January 1, 1968) |
| 4 | 75 Page, Report on Operations—Phase III |
| 5 | 121 Page, Operations Manual |
| 6 | 54 Page, Hiring Procedure Manual |
| 7 | 8 Page, Progress Report on Operations Phase I |
| 8 | 9 Page, Original of: Progress Report on Operations—Phase II |
| 9 | 9 Page, Carbon Copy of: Progress Report of Operations—Phase II |

| *Plaintiff's Exhibit No.* | *Description* |
|---|---|
| 10 | 9 Page, Carbon Copy of: Progress Report of Operations—Phase II |
| 11 | 10 Page, Current Customer Lists |
| 12 | 5 Page, Customer Identification—1968 |
| 13 | 3 Page, Customer Data—Mosler Pricing Data |
| 14 | 13 Page, Customer Data—Alloy Metals |
| 15 | 5 Page, Customer Data—Firth |
| 16 | 10 Page, Compilation of Foreign Sales and Purchases |
| 17 | 33 Page, Report—European Sales Trip and Market Survey |
| 18 | 30 Page, Reports on Purchases of Carbide Scrap |
| 19 | 9 Page, Current Weekly Recaps of Scrap Purchases |
| 20 | 10 Page, Step-by-Step Process Analysis Compilations |
| 21 | 6 Page, Pricing Data—Maxalloy—Customer Prices |
| 22 | 29 Page, Pricing Data Compilation |
| 23 | 15 Page, Product Cost Analysis |
| 24 | 30 Page, Cost Analysis of Each Production Step |
| 25 | 3 Page, Labor Cost Data—Plates |
| 26 | 63 Page, Cost Studies and Pricing Structure |
| 27 | 15 Page, Accounting Department and Standard Cost Accounting System |
| 28 | 13 Page, Analysis Reports on Computer Direct Mail Scrap Purchases |

| *Plaintiff's Exhibit No.* | *Description* |
|---|---|
| 29 | 1 Page, Competition Price Data |
| 30 | 95 Page, Study for Operations Manual |
| 31 | 14 Page, Budget and Expense Forecast Analysis |
| 32 | 6 Page, Sales and Expense Forecast Data—1969 |
| 33 | 2 Page, Shwayder Personnel Names & Addresses |
| 34 | 12 Page, Shwayder Personnel Employment Agreements |
| 35 | 7 Page, Job Descriptions of Shwayder Personnel |
| 36 | 16 Page, Shwayder Sales Commission Data |
| 37 | 1 Page, Chemical Code Identifications |
| 38 | 1 Page, Pelletizing Analysis |
| 39 | 37 Page, Inventory Records |
| 40 | 7 Page, Index to Accounting Records |
| 41 | 22 Page, Accounting Journal Pages |
| 42 | 5 Page, Computer Accounting Information |
| 43 | 8 Page, Office Operation Procedures |
| 44 | 36 Page, Production Problems |
| 45 | 17 Page, Memos on Production Problems |
| 46 | 12 Page, Outlines of Administrative Problems |
| 47 | 12 Page, Memos on Commissions & Payments |
| 48 | 49 Page, Management Report and Analysis |

*Plaintiff's*
*Exhibit No.*     *Description*

| | |
|---|---|
| 49 | 18 Page, Memos on Management Planning |
| 50 | 18 Page, Management Reports, Analysis & Recommendations |
| 51 | 4 Page, Management Reports |
| 52 | 13 Page, Rectangular Tube Sources |
| 53 | 79 Page, Miscellaneous Administrative Memos |
| 54 | 25 Page, Miscellaneous Forms |
| 55 | 5 Page, Shwayder Bank Account Records |
| 56 | 3 Photographs Relating to Mill Installation and Water Damage Claim |
| 57 | 12 Page, Miscellaneous Notes |
| 58 | 18 Page, Shwayder Incentive Plans |
| 59 | 19 Pages, Miscellaneous Shwayder Letters Returned by Baum on January 30, 1970, During Discovery Deposition |