HAYES-ALBION CORPORATION v KUBERSKI

Docket No. 48114. Submitted January 14, 1981, at Lansing.—Decided
August 18, 1981. Leave to appeal applied for.

Michael A. Kuberski was hired by Hayes-Albion Corporation
doing business as Gladen Division of Hayes-Albion Corporation
on October 17, 1973. One week later Kuberski signed an
invention assignment agreement and a trade secrets agree-
ment. Hayes-Albion manufactured silicone rubber sheets, dies,
rollers and sleeves for hot stamp decorating. Hayes-Albion used
processes and equipment developed primarily by its founder,
Carl Gladen. Kuberski first met Robert F. Lunger, owner of
National Pattern and Model Company and Erie Marking Tool
Company, while employed by Hayes-Albion. After the meeting
Hayes-Albion began doing business with National Pattern and
its business with Erie Marking was substantially increased. In
October of 1976, Kuberski and Lunger incorporated Interna-
tional Silicone Corporation. On January 31, 1977, Kuberski

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur 2d, Master and Servant §§ 104, 105.
   55 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade
   Practices §§ 704-706.
   Disclosure of trade secrets as abandonment of secrecy. 92 ALR3d
   132.
[2] 17 Am Jur 2d, Contracts § 85 et seq.
   53 Am Jur 2d, Master and Servant §§ 18, 19.
[3, 4, 6] 55 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair
   Trade Practices §§ 704-706.
[5] 42 Am Jur 2d, Injunctions §§ 75-77, 112.
   55 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade
   Practices § 708.
[7] 22 Am Jur 2d, Damages §§ 22-25.
[8] 22 Am Jur 2d, Damages § 78.
[9] 22 Am Jur 2d, Damages § 236 et seq.
   Exemplary damages as recoverable for trademark infringement,
   unfair competition or trade practices. 47 ALR2d 1117.
[10] 22 Am Jur 2d, Damages § 237.
[11] 41 Am Jur 2d, Indictments and Informations § 60.
[12] 42 Am Jur 2d, Injunctions §§ 24, 25.
[13] 5 Am Jur 2d, Appeal and Error § 614.

resigned from Hayes-Albion. International Silicone began doing business in direct competition with Hayes-Albion. Hayes-Albion brought an action against Kuberski, Lunger, National Pattern, International Silicone, Erie Marking, Betty J. Lunger, and Georgina O. Kuberski in the Bay Circuit Court, alleging misuse of plaintiff's trade secrets and seeking damages and a permanent injunction. The court, Elza H. Papp, J., granted plaintiff a permanent injunction, damages, both exemplary and for unjust enrichment, and costs. Defendants appealed. *Held:*

1. The trade secret agreement was valid and enforceable.

2. Information constitutes a trade secret if it is 1) valuable enough to give the possessor a competitive edge over those who do not use or know of the information, 2) secret, *i.e.,* sufficient measures are taken to guard its secrecy, and 3) not readily ascertainable, *i.e.,* incapable of being ascertained by the general public without extreme difficulty or hardship. The determination of what constitutes a trade secret is a question of fact for the trier of fact. The trial court did not err in finding the manufacturing processes to be trade secrets and in finding plaintiff's customer lists and sources of supply to be confidential information which defendants were not entitled to use. A court may enjoin the use of written lists stolen by a person in a confidential relationship.

3. The evidence supported the court's finding that plaintiff was entitled to damages for lost profits.

4. The trial court found that defendant Kuberski diverted business to defendants Erie Tool and National Pattern in order to finance defendant International Silicone. The evidence substantiated the trial court's findings. The award of damages for unjust enrichment was proper.

5. Exemplary damages may be awarded in a trade secrets case. The court did not err in awarding exemplary damages.

6. The trial court did not err in not permitting a witness who was not on the witness list to testify.

7. It is within the discretion of the trial court to grant or deny a permanent injunction. The court did not err in granting the permanent injunction.

8. A party who has not followed the procedure to secure the disqualification of a judge may not raise the issue for the first time on appeal.

Affirmed.

1. TRADE REGULATION — TRADE SECRET AGREEMENTS — STATUTES.
    A condition of employment that one may not disclose trade

secrets is valid and does not violate either statute or public policy (MCL 445.761; MSA 28.61).

2. Contracts — Consideration — Modification of Contracts — Statutes.

Any agreement to change any contract is not invalid for lack of consideration where it is in writing and signed (MCL 566.1; MSA 26.978[1]).

3. Trade Regulation — Trade Secrets.

Information constitutes a trade secret if it is 1) valuable enough to give the possessor a competitive edge over those who do not use or know of the information, 2) secret, *i.e.,* sufficient measures are taken to guard its secrecy, and 3) not readily ascertainable, *i.e.,* incapable of being ascertained by the general public without extreme difficulty or hardship.

4. Trade Regulation — Trade Secrets — Trial.

The determination of what constitutes a trade secret is a question of fact for the trier of fact.

5. Injunctions — Written Lists.

A court may enjoin the use of written lists stolen by a person in a confidential relationship.

6. Trade Regulation — Trade Secrets — Trial.

In a trial for the misappropriation of trade secrets, once the plaintiff has established that a person in a confidential relationship has stolen its trade secrets or customer lists, the burden of going forward with the evidence shifts to the guilty party to establish that the information taken was not secret but openly known in the industry.

7. Damages — Trial — Speculative Damages.

The requirement that damages be certain is relaxed where the fact of damage is proven and the only question to be decided is the extent of the damage; where damages cannot be measured with certainty, the risk of uncertainty should be cast upon the wrongdoer, not the injured party.

8. Equity — Damages — Unjust Enrichment.

An award of damages to an employer for unjust enrichment is proper where an employee diverts his employer's business to new suppliers for the purpose of financing a business interest in which the employee and the suppliers' owner have an interest.

9. TRADE REGULATION — TRADE SECRETS — EXEMPLARY DAMAGES.
Exemplary damages may be awarded in a trade secrets case.

10. DAMAGES — EXEMPLARY DAMAGES.
The purpose of exemplary damages is not to punish the defendant but to render the plaintiff whole; the focus is on plaintiff's injuries to determine the measure of exemplary damages but on the action of the defendant in determining if exemplary damages should be awarded.

11. WITNESSES — UNENDORSED WITNESSES.
It is within the discretion of the trial court to permit or not permit an unendorsed witness to testify at trial.

12. INJUNCTIONS — PERMANENT INJUNCTIONS.
It is within the discretion of the trial court to grant or deny a permanent injunction.

13. APPEAL — PRESERVING QUESTION — JUDGES — COURT RULES.
A party who has not followed the procedure to secure the disqualification of a judge may not raise the issue for the first time on appeal (GCR 1963, 912).

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *E. Frank Cornelius, Nancy G. Edmunds* and *Terrence E. Haggerty),* for plaintiff.

*Marsh & Marsh,* for defendants.

Before: BEASLEY, P.J., and R. B. BURNS and C. J. HOEHN,* JJ.

C. J. HOEHN, J. Defendants appeal as of right an October 9, 1979, judgment rendered by the trial court granting a permanent injunction in favor of plaintiff and which also gave plaintiff monetary damages and unjust enrichment damages. These damages were based upon defendants' misuse of plaintiff's trade secrets.

Defendant Kuberski was employed by plaintiff on October 17, 1973. Approximately one week after defendant Kuberski was hired by plaintiff, he

---

* Circuit judge, sitting on the Court of Appeals by assignment.

signed an invention assignment agreement and a trade secret agreement.

Plaintiff manufactures silicone rubber sheets, dies, rollers, and sleeves to be used in hot stamp decorating. Plaintiff does not do the hot stamp decorating itself. Most of the processes and equipment used by plaintiff were developed by the founder of the company, Carl Gladen.

Defendant Kuberski met defendant Lunger while working for plaintiff. Mr. Lunger owned defendant National Pattern and Model Company and defendant Erie Marking Tool Company. Although plaintiff had previously used the services of Erie, the volume of business after this meeting substantially increased. The orders before this meeting were approximately $12,500 for the previous year. For the next year and two months, the sales volume was around $81,000. Before this meeting plaintiff did no business with National Pattern.

In October of 1976, defendants Kuberski and Lunger signed the articles of incorporation for defendant International Silicone. Defendant Kuberski resigned from plaintiff corporation on January 31, 1977. During the intervening time, defendant looked for equipment for International Silicone and made various phone calls. This suit was filed on March 17, 1977, charging defendants with misappropriation of trade secrets and confidential information, and plaintiff sought injunctive relief and damages for lost profits and unjust enrichment. A preliminary injunction was issued on April 25, 1978. A trial to the bench was held from April 24, 1979, through May 23, 1979.

The trial court found that defendant Kuberski's trade secret agreement was valid and enforceable. It also found that, regardless of the contract, de-

fendant Kuberski was prohibited by the common law from disclosing trade secrets. The trial court found that plaintiff's manufacturing procedures manual, that plaintiff's bonding technique, that plaintiff's technology for manufacturing dies, that plaintiff's technology for manufacturing rollers and sleeves, that plaintiff's customer lists and project information, and that plaintiff's materials, supplies, and sources were all trade secrets. The court found that defendants had misappropriated each and every one of the above described trade secrets. The court awarded plaintiff lost profits for the time defendants were in operation. These lost profits were based upon plaintiff's selling price and margin of profit, not defendants'.

The court also rendered a judgment against defendants for unjust enrichment. This was based upon defendant Kuberski's placement of orders with defendants National Pattern and Erie while Mr. Kuberski worked for plaintiff. The court also awarded plaintiff exemplary damages in the amount of $25,000 in cash. In all, defendants were found liable for $176,968.39, plus costs of $3,443.80, plus interest. Defendants were also permanently enjoined from disclosing or using any of plaintiff's trade secrets relating to the production, sale or use of material for hot stamp decorating.

Further facts, where necessary, will be included in the discussion of the issues.

STATEMENT OF ISSUES:

I. Whether the trade secrets agreement signed by defendant Kuberski one week after he was employed by plaintiff was valid.

II. Whether plaintiff has trade secrets which defendants used in violation of plaintiff's rights.

III. Whether plaintiff must prove that its alleged

trade secrets and confidential information are not known to others in the trade.

IV. Whether the evidence supports the trial court's finding that plaintiff is entitled to lost profits as the result of sales made by defendants.

V. Whether defendants Lunger, Erie Tool, and National Pattern were unjustly enriched because of defendant Kuberski's placement of business with them when Kuberski worked for plaintiff, and if so, whether plaintiff can recover for unjust enrichment in addition to lost profits.

VI. Whether plaintiff was entitled to exemplary damages under the facts of this case.

VII. Whether the trial court erred in excluding the testimony of Ray Flynt, even on a separate record.

VIII. Whether the trial court erred in issuing a permanent injunction which prohibited defendants from ever disclosing or using trade secrets or confidential information of plaintiff.

IX. Whether the trial court should have granted defendants' motion for a new trial and disqualified itself because of possible bias against defendants.

The Court will discuss these issues *seriatim.*

*I. Whether the trade secrets agreement signed by defendant Kuberski one week after he was employed by plaintiff was valid.*

A condition of employment that one may not disclose trade secrets is valid. *O & W Thum Co v Tloczynski,* 114 Mich 149; 72 NW 140 (1897). The condition may be implied if there is a confidential relationship. *Id.,* 157-158. This condition does not violate public policy against restraint of trade because:

"To restrain him from making use of what he has not discovered is not an injustice to him, and does not

abridge his right to work along those lines which would not be harmful to those to whom he has sustained a position of confidence." *Id.,* 161.

The statute which makes illegal any contract which prevents a person from engaging in any trade or profession does not apply to a trade secret agreement. *Glucol Manufacturing Co v Schulist,* 239 Mich 70, 74; 214 NW 152 (1927). A contract which restricts the employee only from disclosing trade secrets, and not from employment in the industry, does not violate the statute. When "one obtains a trade secret of another either under contract not to divulge the same or because of relationship of confidence or through his employment, he will not be permitted afterward to make use of such secret for his own benefit or to disclose it to others without the consent of the original possessor of the secret". *Dutch Cookie Machine Co v Vande Vrede,* 289 Mich 272, 279-280; 286 NW 612 (1939).

Although one has the right to change jobs and use his learned skills, he does not have the right to disclose trade secrets. *Allis-Chalmers Manufacturing Co v Continental Aviation & Engineering Corp,* 255 F Supp 645, 653 (ED Mich, 1966).

The trade secret agreement signed by defendant Kuberski was executed one week after he was hired by plaintiff. The agreement provides:

"I agree not to communicate or disclose to any person, either directly or indirectly or under any circumstances or at any time, any knowledge or information whatsoever acquired by me during the period of my employment relating to or concerning the Company's inventions, trade secrets, systems or any other confidential information regarding the property, business and affairs of the Company or any of its subsidiaries without the written consent of the Company, and I agree

not to utilize or make available any such knowledge or information, either directly or indirectly, in connection with the solicitation of or the acceptance of employment with any competitor of the Company."

The agreement was restricted to the disclosure of trade secrets. Defendant Kuberski is perfectly free to use his general skill and knowledge. This agreement does not violate MCL 445.761; MSA 28.61.

Even without an agreement specifically prohibiting disclosure of trade secrets, defendant Kuberski is prohibited by the common law from disclosing such trade secrets. *O & W Thum Co, supra,* 157-158. Defendant Kuberski's own testimony indicated that he knew there was certain information he should not disclose to competitors.

Finally, defendant Kuberski's contention that there was no consideration for the agreement, and it was therefore unenforceable, is without merit. MCL 566.1; MSA 26.978(1) provides that any agreement to change any contract is not invalid because of lack of consideration as long as the modification is written and signed. Defendant Kuberski's attempt to restrict this statute to real property and personal property does not easily comport with the language of the statute itself.

It is this Court's opinion that a valid and enforceable trade secret agreement applied to defendant Kuberski. There was no error by the trial court on this issue.

*II. Whether plaintiff has trade secrets which defendants used in violation of plaintiff's rights.*

The law gives no protection to knowledge which is so general as to be common property in the trade. *Russell v Wall Wire Products Co,* 346 Mich 581, 590-591; 78 NW2d 149 (1956). *Kubik, Inc v Hull,* 56 Mich App 335, 347-348; 224 NW2d 80 (1974), lists the steps in order to find whether the

information is a trade secret. To be a trade secret the information must be: (1) valuable enough to give the possessor a competitive edge over those who do not use the information or know of it; (2) secret, that is, sufficient measures are taken to guard the secrecy of the information and preserve its confidentiality; and (3) information which is not readily ascertainable, that is, incapable of being ascertained by the general public without extreme difficulty or hardship. See also *Manos v Melton,* 358 Mich 500, 508; 100 NW2d 235 (1960).

Whether plaintiff's processes were a trade secret is a question of fact. The trier of fact found that the processes were trade secrets.

This Court will accept the findings of fact of the trial court unless the record reveals no substantial evidence to support such findings. *Tuttle v Dep't of State Highways,* 397 Mich 44; 243 NW2d 244 (1976).

The trial court record overwhelmingly supports the trial court's findings in relation to the manufacturing processes which the trial court ordered protected.

The customer lists of plaintiff and plaintiff's sources of materials and supplies were capable of being discovered through research and investigation.

Defendant Kuberski did not discover the trade lists of customers and sources as the result of any independent research or investigation. Defendant Kuberski took advantage of his confidential relationship with plaintiff to avail himself of plaintiff's customer lists and sources of supply.

"Even conceding, as the Defendants contend, that all the trade secret information, acquired by the Defendants could *have been* legally obtained through investigation, research and the like, this does not negate the

secrecy of the information, as to the present Defendants, nor does it negate their culpability, for they failed to employ legal, proper and fair means in learning these trade secrets." *Kubik, Inc v Hull,* 56 Mich App 335, 352; 224 NW2d 80 (1974).

The trial court did not err in holding plaintiff's customer lists and sources of supply to be confidential information which defendants were not entitled to use. To hold otherwise would permit defendants to profit from their theft.

*Kubik, supra,* refutes the notion that all information garnered in a confidential relationship is enjoinable at the behest of the former employer.

However where, as here, written lists are stolen by a person in a confidential relationship, the use of such written lists is indeed enjoinable.

Defendants may, if such lists are publicly available, purchase and use such lists notwithstanding that plaintiff's customers, plaintiff's sources of supply or some of them are included on such public trade lists.

*III. Whether plaintiff must prove that its alleged trade secrets are not known to others in the trade.*

There is ample evidence, including the testimony of defendant Kuberski, from which the trial court could infer that the manufacturing processes were trade secrets and by implication, at least, not known to the general public. The findings of the trial court will not be disturbed where the evidence reveals supporting evidence. *Tuttle, supra.*

The Court will not repeat the statements of the law relating to customer lists and sources of supply set forth in section II.

Once plaintiff has established that a person in a confidential relationship has stolen its trade secrets or customer lists the burden of going forward

with the evidence falls on the guilty party to establish that the trade secrets and customer lists are not in fact secret but are openly known in the trade.

*IV. Whether the evidence supports the trial court's finding that plaintiff is entitled to lost profits as a result of sales made by defendants.*

Defendants contend that, although an overwhelming percentage of its sales were made to plaintiff's customers, plaintiff failed to prove that if defendants had not made the sales plaintiff would have. Hence plaintiff's damages are speculative and cannot be recovered.

The general rule is that plaintiff may recover all damages resulting necessarily, immediately and directly from defendants' breach but may not recover such damages as are contingent, speculative or uncertain. As the United States Supreme Court has said:

"Nor can we accept the view of that court that the verdict of the jury, in so far as it included damages for the first item, cannot stand because it was based upon mere speculation and conjecture. This characterization on the basis for the verdict is unwarranted. It is true that there was uncertainty as to the extent of the damage, but there was none as to the fact of damage; and there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage, and the measure of proof necessary to enable the jury to fix the amount. The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount. *Taylor v Bradley,* 4 Abb App Dec 363, 366, 367; 100 Am Dec 415:

" 'It is sometimes said that speculative damages cannot be recovered, because the amount is uncertain; but such remarks will generally be found applicable to such

damages as it is uncertain whether sustained at all from the breach. Sometimes the claim is rejected as being too remote. This is another mode of saying that it is uncertain whether such damages resulted necessarily and immediately from the breach complained of.'" *Story Parchment Co v Paterson P Paper Co,* 282 US 555, 562; 51 S Ct 248; 75 L Ed 544, 548 (1931).

Concerning uncertainty, the Court said:

" 'Whatever of uncertainty there may be in this mode of estimating damages, is an uncertainty caused by the defendant's wrongful act; and justice and sound public policy alike require that he should bear the risk of the uncertainty thus produced * * *.' " *Story, supra,* 565.

Moreover, the Michigan Supreme Court has followed the principles articulated in the *Story* decision from at least the early 1860's when Justice CHRISTIANCY wrote:

"The nature of the case is such that the wrong-doer has chosen to make it; and upon every principle of justice, *he* is the party who should be made to sustain all the risk of loss which may arise from the uncertainty pertaining to the nature of the case, and the difficulty of accurately estimating the results of his own wrongful act. Upon what principle of right can courts of justice assume—not simply to divide this risk, which would be thus far unjust—but to relieve the wrong-doer from it entirely, and throw the *whole* upon the innocent and injured party? Must not such a course of decision tend to encourage trespasses, and operate as an inducement for parties to right themselves by violence, in cases like the present?

"Since, from the nature of the case, the damages cannot be estimated with certainty, and there is a risk of giving by one course of trial less, and by the other more than a fair compensation—to say nothing of justice—does not sound policy require that the risk should be thrown upon the wrong-doer instead of the injured

party? However this question may be answered, we cannot resist the conclusion that it is better to run a slight risk of giving somewhat more than actual compensation, than to adopt a rule which, under the circumstances of the case, will, in all reasonable probability, preclude the injured party from the recovery of a large proportion of the damages he has actually sustained from the injury, though the amount thus excluded can not be estimated with accuracy by a fixed and certain rule. Certainty is doubtless very desirable in estimating damages in all cases; and where, from the nature and circumstances of the case, a rule can be discovered by which adequate compensation can be accurately measured, the rule should be applied in actions of tort, as well as in those upon contract." *Allison v Chandler,* 11 Mich 542, 554-555 (1863).

Further, our own Court has repeatedly held adversely to defendants' claim:

"It has been observed that the certainty requirement 'will be relaxed where the *fact* of damage has been established and the question to be decided is the *extent* of the damage.' 2 Harper and James, Law of Torts, § 25.3, p 1306. (Emphasis by authors.)

" 'The law does not require impossibilities; and can not, therefore, require a higher degree of certainty than the nature of the case admits.' *Allison v Chandler,* 11 Mich 542, 555 (1863).

"On the principle that where a litigant can show he had been damaged, but his damages cannot be measured with certainty, that it is better that he recover more than he is entitled to than less, the rule in Michigan is that the risk of the uncertainty is cast upon the wrongdoer, not the injured party. *Routsaw v McClain,* 365 Mich 167, 171 (1961)." *Howard v City of Melvindale,* 27 Mich App 227, 235; 183 NW2d 341 (1970).

The fact of damage having been established, the burden of going forward with the evidence to show

that plaintiff would not have made the sales was upon the defendants. Defendants failed in this burden.

*V. Whether defendants Lunger, Erie Tool, and National Pattern were unjustly enriched because of defendant Kuberski's placement of business with them when Kuberski worked for plaintiff, and if so, whether plaintiff can recover for unjust enrichment in addition to lost profits.*

The trial court found that defendant Kuberski diverted business to defendants Erie Tool and National Pattern in order to finance defendant Silicone. The evidence substantiates the trial court's findings. The award of damages for unjust enrichment was proper.

Unjust enrichment is allowed for the wrongful placement of tooling orders with Erie Tool and National Pattern. Damages were awarded for the loss of profits accruing from the unlawful appropriation and use of trade secrets. These are separate wrongs which entitled plaintiff to separate recoveries. Neither one overlaps the other.

*VI. Whether plaintiff was entitled to exemplary damages under the facts of this case.*

Michigan law is clear that exemplary damages may be awarded in cases such as this. Exemplary damages may be awarded in a trade secrets case. *Shwayder Chemical Metallurgy Corp v Baum,* 45 Mich App 220, 225; 206 NW2d 484 (1973).

The purpose of exemplary damages is not to punish the defendant but to render the plaintiff whole. The focus is on plaintiff's injuries to determine the measure of exemplary damages. The focus is on the action of the defendant in determining if exemplary damages should be awarded. *Peisner v Detroit Free Press, Inc,* 68 Mich App 360; 242 NW2d 775 (1976).

Defendant's conduct clearly entitled plaintiff to recover whatever exemplary damages it sustained.

The trial court found from the evidence that plaintiff suffered uncompensated damages by reason of defendant's wrongdoing.

Many such elements of damage are incapable of ascertainment, *e.g.*, the amount of time defendant Kuberski devoted to National Silicone when he was being paid by plaintiff.

The court did not err in awarding exemplary damages.

*VII. Whether the trial court erred in excluding the testimony of Ray Flynt, even on a separate record.*

Mr. Flynt was not on the list of witnesses exchanged by counsel prior to trial. Whether he was to be permitted to testify at the trial was discretionary with the court. The court did not abuse its discretion in refusing the proferred testimony of Mr. Flynt.

*VIII. Whether the trial court erred in issuing a permanent injunction which prohibited defendants from ever disclosing or using trade secrets or confidential information of plaintiff.*

Whether a permanent injunction should be issued is a matter for the discretion of the court. *Kubik, Inc v Hull,* 56 Mich App 335; 224 NW2d 80 (1974).

The court's conclusion that the permanent injunction was necessary in order to uphold defendant Kuberski's contract with the plaintiff is amply supported by the facts and is affirmed.

*IX. Whether the trial court should have granted defendants' motion for a new trial and disqualified itself because of possible bias against defendants.*

The proper procedure to secure the disqualifica-

tion of a judge is a motion for disqualification. GCR 1963, 912.

Defendant, not having followed the court rules, may not raise the issue for the first time on appeal.

Righteous indignation is not entirely inappropriate, even to a court of law.

The trial court is affirmed, plaintiff will recover its costs.