**MINERAL DEPOSITS LIMITED, an Australian Corporation, Plaintiff–Appellee,**

v.

**Theodore ZIGAN, Rite Form Concrete, Inc. d/b/a Zigan Sand and Gravel, Inc., Stephen Zbikowski and Camax Consulting, Inc., Defendants–Appellants.**

Nos. 87CA0703, 87CA0705.

Colorado Court of Appeals, Div. V.

Dec. 15, 1988.

Rehearing Denied Jan 19, 1989.

Certiorari Denied May 15, 1989.

Quigley and Bruce, Neil Quigley, Denver, for plaintiff-appellee.

Harry G. Titcombe, Jr., P.C., Harry G. Titcombe, Jr., Denver, Chrisman, Bynum & Johnson, P.C., James R. Young, Longmont, for defendants-appellants.

NEY, Judge.

Defendants, Theodore Zigan, Rite Form Concrete, Inc., Stephen Zbikowski, and Camax Consulting, Inc., appeal the judgment of the trial court holding them jointly and severally liable to plaintiff, Mineral Deposits Limited, for misappropriation of trade secrets and fraud. We affirm in part and reverse in part.

Plaintiff is an Australian corporation engaged in developing and manufacturing mining equipment. One of the products developed by plaintiff was the Reichert Spiral Concentrator, a device for recovering gold particles from sand and gravel. The Reichert spiral has received a patent in Australia, and before the events at issue here occurred, plaintiff had applied for a patent in this country.

In October 1983, defendant Zigan contacted plaintiff's sales representative and stated that he was interested in purchasing up to 200 spirals for use in his gravel pit. The sales representative agreed to lend Zigan a Reichert spiral for the purpose of testing the product's efficiency. After Zigan received the spiral, he removed the label which indicated that patent applications were pending and gave the spiral to defendant Zbikowski. Zbikowski then cut the spiral into pieces, made molds of the components, and proceeded to manufacture copies of the spiral.

When Zigan inspected the spirals produced by Zbikowski, he realized that Zbikowski was unable to duplicate the interior lining of plaintiff's spiral. Zigan then contacted plaintiff and obtained information about the equipment and processes used to coat the interior of plaintiff's spiral. Using this information, Zigan purchased the necessary equipment, and Zbikowski resumed production.

In January 1984, plaintiff contacted Zigan and demanded that he either pay for the spiral or return it. Zigan agreed to

buy the spiral, and plaintiff sent Zigan an invoice which stated that the spiral was to be returned if payment was not made within seven days.

After Zigan failed to make the requested payment, plaintiff discovered that Zigan and Zbikowski were producing copies of plaintiff's spiral. Plaintiff immediately demanded the return of its spiral. Zigan refused, and instead offered to pay for the spiral. Plaintiff refused to accept Zigan's payment, and instead instituted this action.

## I.

Defendants do not contest the factual circumstances recited above; rather, they contend that the Reichert spiral lost its status as a trade secret once the spiral was offered for sale to the public, and therefore, the trial court erred in finding that they misappropriated plaintiff's trade secret. We disagree.

■■■ A trade secret may consist of any formula, pattern, device, or compilation of information which is used in one's business and which gives the owner of the trade secret an opportunity to obtain an advantage over competitors who do not know of or use the trade secret. Restatement of Torts § 757, comment b (1939). Where a trade secret is not patented by the United States, state law may not prohibit the copying of an article embodying the trade secret, and competitors are free to discover the trade secret by "fair and honest means, such as by independent invention, accidental disclosure or by so-called reverse engineering, that is by starting with the known product and working backwards to divine the process." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed. 2d 315 (1974). However, if a trade secret is divulged under an express or implied restriction of nondisclosure or nonuse, a party who engages in unauthorized use of the information will be liable in damages to the owner of the trade secret.

This principle is reflected in Restatement of Torts § 757 (1939), which provides in pertinent part:

"One who disclosed or used another's trade secret, without a privilege to do so is liable to the other if

"(a) he discovered the secret by improper means, or

"(b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him, or

"(c) he learned the secret from a third person with notice of the facts that it was a secret and that the third person discovered it by improper means or that the third person's disclosure of it was otherwise a breach of his duty to the other...."

*Cf.* Uniform Trade Secrets Act, § 7–74–101 et seq. C.R.S. (1986 Repl.Vol. 3A) (applicable to misappropriations occurring on or after July 1, 1986).

■■ Here, plaintiff lent the spiral to Zigan for the express purpose of testing the product. There was evidence to support the trial court's conclusion that Zbikowski knew of Zigan's conditions in obtaining the spiral. Under these circumstances, Zigan and Zbikowski were under an implied duty to preserve the spiral in its original condition and not to use it for purposes other than testing. We agree with the trial court's holding that defendants' use of the spiral to produce copies was an unauthorized use sufficient to render defendants liable for misappropriation of plaintiff's trade secret.

## II.

Defendants next contend that the trial court erred in awarding compensatory damages based on plaintiff's lost profits. We disagree.

■■ The measure of damages for misappropriation of trade secrets entitles a plaintiff to recover full compensation for his lost profits and requires a defendant to surrender the profits which he realized from his tortious conduct. *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 385 N.E.2d 1349 (1979).

■■ Here, defendants produced 170 spirals which were either used by defendants or sold to others. The trial court deter-

mined plaintiff's damages by multiplying the percentage of profit plaintiff would receive from the sale of an individual spiral by the total amount that plaintiff would have received from the sale of 170 spirals. We perceive no error in determining damages by this method. *See USM Corp. v. Marson Fastener Corp.*, 392 Mass. 334, 467 N.E.2d 1271 (1984); *Hayes–Albion Corp. v. Kuberski*, 108 Mich.App. 642, 311 N.W.2d 122 (1981).

### III.

■ Defendants Zbikowski and Camax Consulting, Inc., contend the trial court erred in finding them liable for fraud. We agree.

There was no evidence presented which would suggest that Zbikowski or Camax Consulting, Inc., were involved in making any misrepresentations to plaintiff. Therefore, there was no basis for finding these defendants liable to plaintiff for fraud.

The judgment of liability for misappropriation of trade secrets and the award of damages is affirmed as to all defendants. That portion of the judgment awarding damages for fraud as to defendants Zbikowski and Camax Consulting, Inc. is reversed.

PLANK and JONES, JJ., concur.