*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANGSTROM ALUMINUM CASTINGS, LLC,

        Plaintiff-Appellee,

v

ANTHONY REED and ORNAMENT OF GRACE HOLDINGS, LLC,

        Defendants-Appellants,

and

CHEMICAL BANK,

        Defendant.

UNPUBLISHED
February 16, 2023

No. 358611
Kent Circuit Court
LC No. 18-002791-CB

Before: SHAPIRO, P.J., and LETICA, and FEENEY, JJ.

PER CURIAM.

In this case alleging a usurpation of corporate opportunity, defendants Anthony Reed and Ornament of Grace Holdings, LLC ("Ornament"), appeal by right the trial court's entry of judgment in favor of plaintiff Angstrom Aluminum Castings, LLC ("AAC"), after a bench trial. For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

Reed previously worked for Magnesium Aluminum Manufacturing Company ("MAMC"). In December 2015, Angstrom Automotive Group, LLC ("AAG"), purchased MAMC's assets. The president of AAG, Nagesh Palakurthi, described AAG as a holding company for manufacturing companies that are wholly owned by AAG. AAC is one of those subsidiaries and it was created to become the managing entity of MAMC's assets and facilities. Reed accepted an offer from AAG to become the general manager of AAC, which was identified in the offer letter to Reed as a "division of" AAG. Reed was responsible for AAC's day-to-day activity; he reported and made recommendations to Palakurthi regarding AAC.

-1-

AAC assumed the lease obligations for two of MAMC's facilities, including one located in Lowell that is at the center of this dispute. The lease for the Lowell facility was executed in 2009 and expires in 2026. The monthly rent payment began at about $7,300 per month and increases yearly. AAC moved all equipment out of the Lowell facility, and Reed knew that Palakurthi wanted to purchase the facility to relieve AAC of its onerous rent payments.

Reed was the sole contact with the Lowell facility's landlord, and he informed Palakurthi when a purchase agreement was entered into for the facility. On January 18, 2017, Reed sent Palakurthi an e-mail summarizing his tour of the facility with the potential third-party buyer. But Reed did not inform Palakurthi or any other Angstrom representative when the potential buyer terminated the purchasing agreement. Instead, Reed told the real estate broker for the property that he was interested in purchasing the Lowell facility and asked that his interest be kept confidential. Reed and his wife formed Ornament for the purpose of purchasing the Lowell facility, and Reed obtained financing by using AAC's security deposit as collateral.[1] A purchase agreement in the amount of $325,000 was signed on February 16, 2017. After the purchase became final and Ornament started collecting rent from AAC, Reed informed Palakurthi that Ornament was his company. Palakurthi then fired Reed.

AAC brought the instant suit alleging breach of fiduciary duty against Reed and aiding and abetting that breach against Ornament. The thrust of AAC's claim was that Reed usurped a corporate opportunity from AAC by not disclosing the opportunity to purchase the Lowell facility for $325,000. At the bench trial, defendants argued that this claim failed because AAC did not have the financial ability to purchase the property. Rather, it was AAG, the parent company, that would have purchased the property. But AAG was not a plaintiff to this case and Reed did not owe it a duty. Defendants further argued that if AAG or another Angstrom entity had purchased the property, then AAC still would have owed rent, and therefore AAC did not suffer damages from any breach of duty by Reed.

Relevant to these arguments, Palakurthi testified that an Angstrom entity would have purchased the Lowell facility for $325,000 had he been informed of that opportunity. Palakurthi did not know which Angstrom entity would have made the purchase because Reed failed to disclose that the property was for sale. Although AAC was losing two to three million dollars per year, Palakurthi's testimony indicates that AAC could have made the purchase through an equity contribution or loan from AAG. Referring to AAC's rent payment, Palakurthi explained that purchasing the Lowell facility would have reduced AAC's "losses by $10,000 a month." Palakurthi agreed during cross-examination that AAC would have been obligated to pay rent if a different Angstrom entity had purchased the Lowell facility and assumed the lease, but he also testified that "AAC is a special situation. It's not making money. It'll be not paying; It'll be an I.O.U."

In a written opinion and order, the trial court first determined that Reed owed a fiduciary duty to AAC. The court then addressed defendants' argument that AAC's claim failed because it could not have purchased the Lowell facility on its own. The court concluded that although AAG

---

[1] Reed obtained financing through defendant Chemical Bank, who was dismissed from this action without prejudice.

would have in all likelihood been the purchaser of the Lowell facility, Reed also owed a fiduciary duty to AAG. The court reasoned that Reed knew from the inception of his employment that AAC was merely a division of AAG and the circumstances of the case did not warrant drawing a distinction between the two. The court further found that although AAC "may very well have lacked the wherewithal in 2017 to undertake the purchase," AAG had the resources to buy the facility. Ultimately, the court concluded that AAC and AAG "collectively had the ability to purchase the property." The court then determined that the remaining elements of the breach of fiduciary claim were met and that Ornament aided and abetted the breach of fiduciary duty. As for the remedy, a judgment was entered ordering defendants to convey clear title to the Lowell facility to AAC or a holding company designated by AAC and awarding AAC $173,000 as the amount in damages, attorney's fees, and taxable costs.

## II. DISCUSSION

## A. USURPATION OF CORPORATE OPPORTUNITY

Defendants first argue that the trial court erred by concluding that AAC proved each element of its breach of fiduciary duty claim. Specifically, defendants contend that AAC failed to establish the "financial ability" element by showing that they could have purchased the Lowell facility.[2]

"A fiduciary owes a duty of good faith to his principal and is not permitted to act for himself at his principal's expense during the course of his agency." *Central Cartage Co v Fewless*, 232 Mich App 517, 524; 591 NW2d 422 (1998). "It is widely recognized that the appropriation of a corporate opportunity by an officer or director will constitute an actionable breach of fiduciary duties." *Prod Finishing Corp v Shields*, 158 Mich App 479, 485; 405 NW2d 171 (1987). Defendants do not dispute the trial court's ruling that Reed owed a fiduciary duty to AAC as its general manager. See *Shwayder Chem Metallurgy Corp v Baum*, 45 Mich App 220, 222-225; 206 NW2d 484 (1973) (holding that a fiduciary relationship existed between a "business manager" and the company under the facts of that case).

This Court has adopted the following recitation of the corporate-opportunity doctrine:

"A corporate officer or director is under a fiduciary obligation not to divert a corporate business opportunity for his own personal gain. The rule is that if there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake which is, from its nature, in the line of the corporation's business and is of practical advantage to it, and which is one in which the corporation has an interest or a reasonable expectancy, and if, by embracing the opportunity, the self interest of the officer or director will be brought into conflict with that of this corporation, the law will not permit him to seize the

---

[2] Following a bench trial, this Court reviews for clear error the trial court's factual findings and reviews de novo its conclusions of law. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). Defendants are not challenging the trial court's factual findings, but instead the legal conclusions based on those findings. Accordingly, de novo review applies.

opportunity for himself. If he does, the corporation may claim the benefit of the transaction." [*Prod Finishing Corp*, 158 Mich App at 485-486, quoting 18B Am Jur 2d, Corporations, § 1770, pp 623-624.]

Although we have never expressly derived "elements" from these principles, we agree with the following formulation provided by defendants: (1) the corporation is financially able to undertake the opportunity; (2) the opportunity is within the corporation's line of business; (3) the corporation has an interest or expectancy in the opportunity; and (4) by taking the opportunity, the fiduciary's interest is brought into conflict with the corporation's interest.

Defendants challenge only the trial court's ruling on the first element, contending that AAC, which was losing millions annually, did not have the financial ability to purchase the Lowell facility for $325,000. As noted, the trial court found that AAC likely could not have purchased the property on its own but that AAG had the resources to do so. The court ultimately concluded that AAC and AAG "collectively had the ability to purchase the property." Defendants argue that the trial court's reasoning runs afoul of corporate separateness. "It is a well-recognized principle that separate corporate entities will be respected. Michigan law presumes that, absent some abuse of corporate form, parent and subsidiary corporations are separate and distinct entities." *Seasword v Hilti, Inc*, 449 Mich 542, 547; 537 NW2d 221 (1995) (citation omitted). Because AAC and AAG are separate entities, the argument runs, the trial court erred by conflating them for purposes of the corporate-opportunity doctrine. Defendants argue that AAC alone must have been able to take advantage of the corporate opportunity.

As an initial matter, there appears to be some confusion as to what the trial court meant when it found that AAC and AAG "collectively" could have purchased the Lowell facility. AAC argues that this finding is supported by Palakurthi's testimony that AAG could have loaned AAC money or made a capital contribution sufficient for the purchase. In this scenario, AAC would have technically been the buyer. Defendants counter that the trial court did not make findings to this effect, and they dismiss Palakurthi's testimony as "self-serving." But at the same time, there was no evidence compelling the conclusion that AAG would have been the purchaser of the property. Again, Palakurthi testified that he did not know which Angstrom entity would have purchased the property because the opportunity was not presented to him.

We acknowledge that the record is vague as to how AAC and AAG would have "collectively" purchased the Lowell facility. However, it is difficult to see why this should be held against AAC when Reed's actions denied AAC any decision-making on this matter. Secondary sources and caselaw from sister states suggest that when the defendant does not disclose the opportunity, the corporation should not be faulted for lack of proof specifying how it would have undertaken the opportunity.[3] As explained by 18B Am Jur 2d, Corporations, § 1532, p 555:

---

[3] "Caselaw from sister states and federal courts is not binding precedent but may be relied on for its persuasive value." *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020). The one Michigan case addressing the financial-ability element offers little guidance because the facts are not analogous. See *SCD Chem Distrib, Inc v Medley*, 203 Mich App 374;

-4-

Whenever a director or officer learns of a business opportunity of which he or she wants to take advantage but which potentially belongs to the corporation, there should be full disclosure provided to the company. Indeed, opportunities must be presented to the corporation without regard to possible impediments, and material facts must be fully disclosed, so that the corporation may consider whether and how to address these obstacles.

The reason for requiring disclosure even when the company is in financial distress is that "[t]he very existence of a prospective profitmaking venture may generate additional financial backing and may convince creditors to be less importunate in their demands." *Klinicki v Lundgren*, 298 Or 662, 667-684; 695 P2d 906 (1985) (engaging in an extensive overview of legal authority addressing the merits of strictly applying the financial-ability element).[4] Similarly, in *Phoenix Airline Service, Inc v Metro Airlines, Inc*, 194 Ga App 120, 124; 390 SE2d 219 (1989), rev'd on other grounds 260 Ga 584 (1990), the Georgia Court of Appeals reasoned that

since any uncertainty which may exist as to whether and how vigorously the [plaintiffs] would have pursued the opportunity had it been brought to their attention is attributable to the [defendants'] conduct in concealing their own interest in it, we do not believe that the [defendants] are in a position to complain of a lack of proof on this latter issue. "[T]he appropriate method to determine whether or not a corporate opportunity exists is to let the corporation decide at the time the opportunity is presented." [Quoting Fletcher, Cyclopedia of Corps, § 861.1, p 288 (1986 ed.)]

We find this reasoning persuasive and applicable here. While the trial court found that AAG likely would have been the purchaser of the Lowell facility, the court ultimately concluded that AAC and AAG "collectively" could have purchased the Lowell facility. The lack of proofs specifying how that would have occurred should not be held against AAC when Reed did not disclose the opportunity and allow AAC and Angstrom the chance to decide how to make the purchase.

Further, and perhaps most importantly, the apparent purpose of the financial-ability element is satisfied under the facts of this case. Common law rules should be applied consistent with their purpose. See e.g., *Velez v Tuma*, 492 Mich 1, 19-21; 821 NW2d 432 (2012). The financial-ability element ensures that the corporation actually suffered harm from the defendant's actions. See *Klinicki*, 298 Or at 671-672 (recognizing that the financial-ability element prevents

---

512 NW2d 86 (1994). Indeed, that case did not involve an alleged usurpation of corporate opportunity but rather an alleged violation of the former Uniform Fraudulent Conveyance Act, MCL 566.11 *et seq*.

[4] Notably, states take a variety of approaches to this issue, including that the corporation's financial ability to undertake the opportunity is: (1) not always required; (2) a factor to take into account; (3) a defense that must be proven by the fiduciary; or (4) only relevant when the corporation is technically insolvent. See generally 18B Am Jur 2d, Corporations, § 1534, pp 556-559; 16 ALR 4th 185.

denying the usurper "the fruits of such extraneous activities when they have not demonstrably harmed the corporation . . . .") (quotation marks and citation omitted). That is, if the corporation could not have taken the opportunity, then it was not harmed by the fiduciary's failure to disclose it.

This is a unique case because even if AAC could not have purchased the facility, AAC still would have benefited from an affiliated Angstrom company doing so. There is no dispute on appeal that an Angstrom entity would have purchased the Lowell facility for $325,000 had Reed disclosed to AAC the opportunity to do so. Palakurthi indicated that if a different Angstrom entity had purchased the property, AAC would not have been required to pay rent, stating that "AAC is a special situation. It's not making money. It'll be not paying; It'll be an I.O.U." Palakurthi further testified that the Lowell facility would have been purchased "to reduce [AAC's] rent burden," and that purchasing the property would have reduced AAC's "losses by $10,000 a month." It is reasonable to infer from this testimony that the current lease terms would not have been enforced against AAC had another Angstrom entity purchased the Lowell facility. Accordingly, the purpose of financial-ability element, which is to allow recovery only when the plaintiff corporation suffered harm from the fiduciary's breach, is satisfied in this case. For these same reasons, we reject defendants' argument that AAC did not suffer any damages from Reed's breach of duty.

In sum, the trial court found that AAC and AAG "collectively" could have purchased the Lowell facility, and defendants do not challenge the court's factual findings. While there is some uncertainly as to how the purchase would have been accomplished, that is a product of Reed's failure to disclose the opportunity. Further, Palakurthi's testimony shows that the $10,000 monthly rental payment would not have been enforced against AAC, regardless of which Angstrom entity would have been the buyer. Accordingly, AAC suffered harm from Reed's failure to disclose the corporate opportunity. Under these circumstances, the trial court did not err by concluding that Reed breached his fiduciary duty to AAC and that AAC was entitled to damages.[5]

## B. AIDING AND ABETTING

Defendants also contend that the trial court erred by concluding that Ornament aided and abetted a breach of fiduciary duty. We again disagree.

As we explained in *Nicholl v Torgow*, 330 Mich App 660, 675; 950 NW2d 535 (2019):

Michigan law recognizes a cause of action for aiding and abetting a breach of fiduciary duty. *Echelon Homes, LLC v Carter Lumber Co*, 261 Mich App 424, 445; 683 NW2d 171 (2004), rev'd in part on other grounds 472 Mich 192 (2005).

---

[5] Defendants argue that the trial court erred by finding that Reed owed a fiduciary duty to AAG. We need not address this issue, however, because our analysis is not dependent on Reed owing a fiduciary duty to AAG. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("As a general rule, an appellate court will not decide moot issues."). And we may affirm a trial court when it reaches the correct result for different reasons. See *Sabbagh v Hamilton Psychological Servs*, PLC, 329 Mich App 324, 345; 941 NW2d 685 (2019).

"Where a person in a fiduciary relation to another violates his duty as fiduciary, a third person who participates in the violation of duty is liable to the beneficiary." *LA Young Spring & Wire Corp v Falls*, 307 Mich 69, 106; 11 NW2d 329 (1943). The essential elements required for aiding-and-abetting liability are: (1) that an independent wrong occurred, (2) that the aider or abettor had knowledge of the wrong's existence, and (3) that substantial assistance was given to effecting that wrong. See Restatement Torts, 2d, § 876(b).

Defendants first argue that because no underlying breach of duty occurred, the derivative claim for aiding and abetting also fails. For the reasons discussed, the trial court did not err by ruling that Reed violated his fiduciary duty to AAC and that AAC successfully proved a claim of usurpation of corporate opportunity. Accordingly, this argument fails.

We note that defendants do not dispute that the other elements of aiding and abetting were met in this case, i.e., that Ornament had knowledge of the wrong and gave substantial assistance to complete it. In reaching that conclusion, the trial court relied on the timing of Ornament's creation, the stated purpose in Ornament's articles of organization of "Commercial Real Estate Investment," and the role it played in acquiring the Lowell facility. Indeed, the testimony at trial showed that Reed created Ornament so that AAC would not know that Reed was the purchaser until he revealed that Ornament was his company. For these reasons, the trial court did not err by concluding that Ornament aided and abetted the breach.

Defendants' final argument is that the aiding and abetting claim fails because a principal-agent relationship existed between Reed and Ornament. As best as we can discern, defendants appear to be arguing that Reed and Ornament cannot both be liable for the fiduciary duty violation, because Reed was acting on behalf of Ornament. See *Blair v Checker Cab Co*, 219 Mich App 667, 674; 558 NW2d 439 (1996) ("[A]n agent or employee cannot be considered a separate entity from his principal or corporate employer, respectively, as long as the agent or employee acts only within the scope of his agency [or] employment.") (quotation marks and citation omitted). This argument misconstrues the trial court's ruling, however, and lacks merit. Reed is not being held liable as an agent for Ornament. Rather, he is liable for violating his fiduciary duty as the general manager of AAC, and Ornament is the third party that aided that violation.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Anica Letica
/s/ Kathleen A. Feeney

-7-